STATE OF NORTH CAROLINA v. CHARLES DEWITT YOUNG

No. 1

(Filed 31 January 1977)

1. **Criminal Law § 29; Constitutional Law § 37— defendant's capacity to proceed — right to hearing — waiver of right**

Defendant's statutory right under G.S. 15A-1002(b)(3) to a hearing to determine his capacity to proceed with trial subsequent to his commitment to a mental health care facility was waived by defendant's failure to assert that right.

State v. Young

2. **Constitutional Law § 30; Criminal Law § 29— defendant's capacity to proceed — failure to hold hearing — no denial of due process**

    Where a defendant has been committed and examined relevant to his mental capacity to proceed with trial, and all evidence before the court indicates that he has that capacity, he is not denied due process by the failure of the trial judge to hold a hearing subsequent to the commitment proceedings.

3. **Criminal Law § 87— leading question defined — allowance discretionary**

    A leading question is one that suggests the desired answer and one which frequently has for its answer "yes" or "no"; however, the trial court has discretionary authority to permit leading questions in proper instances, and absent a showing of prejudice the discretionary action of the trial court will not be disturbed.

4. **Criminal Law § 43— gruesome photographs — admissibility for illustration**

    A witness may use a photograph to illustrate his testimony and make it more intelligible to the court and jury, and if a photograph accurately depicts that which it purports to show and is relevant and material, the fact that it is gory or gruesome, or otherwise may tend to arouse prejudice, does not render it inadmissible.

5. **Homicide § 20— photographs of victim — admissibility**

    The trial court in a first degree murder prosecution did not err in allowing into evidence with appropriate limiting instructions photographs of the victim's body, though such photographs were gruesome, since all of them were introduced to illustrate specific and relevant testimony concerning distinct aspects of the wounds and mutilations inflicted upon the victim.

6. **Criminal Law § 169; Homicide § 15— irrelevant testimony concerning corpse — admission harmless error**

    In a first degree murder prosecution the trial court erred in allowing irrelevant and inflammatory testimony concerning the physical state of the corpse; however, admission of this evidence was harmless error beyond a reasonable doubt, since illustrative photographs which had already been admitted into evidence revealed the gruesomeness of the corpse, and a witness who performed a postmortem examination upon the body of the victim had already testified without objection to substantially the same effect concerning the corpse.

7. **Criminal Law § 102— improper jury argument by private prosecutor — failure to object — no intervention by court — no error**

    Remark of the private prosecutor in his closing argument to the jury that "if you find this man is not guilty, I hope that each of you can have the privilege of taking him home with you," while ill advised and of dubious efficacy in favorably influencing the jury, was not so gross and highly prejudicial as to require the court to intervene and correct the abuse in the absence of a request by defendant.

8. **Constitutional Law § 36; Homicide § 31— first degree murder — life sentence substituted for death penalty**

A sentence of life imprisonment is substituted for the death penalty in this first degree murder prosecution.

DEFENDANT appeals from judgment of *Lee, J.,* 2 December 1975 Session, BLADEN Superior Court.

Charles Dewitt Young and Donald Brown were charged in separate bills of indictment, each proper in form, with the first degree murder of Carl Neubie Dowless on 26 June 1975 in Bladen County. As a result of plea bargaining, Donald Brown pled guilty to second degree murder and testified as a State's witness in the case against Charles Dewitt Young.

The State's evidence tends to show that Carl N. Dowless was the owner of a 1968 Chevrolet Impala, green with a black top. Donald Brown had driven for Dowless on several occasions. On 25 June 1975 Donald Brown, Carl Dowless and defendant Charles Dewitt Young left Dawsey Carroll's place of business about 11 p.m. in the Dowless car driven by Brown. They went to Whiteville and started back home about 12:15 a.m. on the morning of 26 June 1975. When they reached a point near the residence of Charles Dewitt Young in Bladen County, Young told Donald Brown "to go down that dirt road . . . I live down there." Donald Brown knew Young did not live down there and said so but Young told him to shut up and drive. Donald Brown drove the car down the dirt road into a wooded area, a distance of about a mile. Upon reaching a "T" intersection, Carl Dowless told Brown to stop so he could urinate. Brown stopped the car and all three occupants got out, leaving the motor running and the lights on. Charles Dewitt Young walked up behind Dowless and struck him in the back of the head. Dowless fell to the ground and Charles Young said, "I'm going to kill him." Then, using a knife, he stabbed and slashed Dowless numerous times. Defendant then took the victim's pocketbook, kept the contents and threw the pocketbook and the knife into the woods in opposite directions. He and Brown then loaded the victim's body into the trunk of the car, drove to a spot 9.8 miles away and unloaded the body in the edge of some woods. They cut and broke small branches and covered the body with them. All this was carried out according to directions given by defendant. The victim's car was left in a ditch about 10 miles from the point where they left the body. Brown and Young started walking and were picked up by Roosevelt Andrews.

While riding with Andrews, who knew and recognized both Brown and Young, defendant stated that he had killed Carl Dowless. Andrews so testified at the trial. They were taken to defendant's home where Brown spent the remainder of the night.

The following day defendant and Donald Brown went to Elizabethtown and at that time defendant gave Brown $5. While in Elizabethtown Donald Brown told Thomas Blanks that defendant had killed Carl Dowless and had forced Brown to stay overnight at defendant's home. Donald Brown left Elizabethtown and returned home where he told his mother that defendant had killed Carl Dowless.

About ten minutes later Sheriff Allen and his Deputy Willie Lee arrived at the Brown home. Donald Brown then rode with the officers to the spot where the body of Carl Dowless had been concealed and showed them the body.

The victim's cap was found at the murder scene and his pocketbook was found in the woods nearby. The murder weapon was never found.

Defendant offered no evidence.

The jury returned a verdict of guilty of murder in the first degree and defendant was sentenced to death. He appealed to the Supreme Court assigning errors discussed in the opinion.

*Rufus L. Edmisten, Attorney General, by David S. Crump, Associate Attorney, for the State of North Carolina.*

*Reuben L. Moore, Jr., attorney for defendant appellant.*

HUSKINS, Justice.

Defendant contends in his first assignment of error that the trial court erred in failing to hold a hearing to determine his capacity to proceed as mandated by G.S. 15A-1002 (Cum. Supp. 1975). That statute reads in relevant part:

"(a) The question of the capacity of the defendant to proceed may be raised at any time by the prosecutor, the defendant, the defense counsel, or the court on its own motion.

(b) When the capacity of the defendant to proceed is questioned, the court:

(1) May appoint one or more impartial medical experts to examine the defendant and return a written report describing the present state of the defendant's mental health. . . .

(2) May commit the defendant to a State mental health facility for observation and treatment for the period necessary to determine the defendant's capacity to proceed. . . .

(3) Must hold a hearing to determine the defendant's capacity to proceed. If examination is ordered pursuant to subdivision (1) or (2), the hearing must be held after the examination. Reasonable notice must be given to the defendant and to the prosecutor and the State and the defendant may introduce evidence."

We find in the record the following events relevant to this assignment of error. On 6 October 1975, defense counsel made a motion stating that in his *opinion* "the defendant may be mentally incapable of answering the charges against him, and that the undersigned has a serious question concerning the ability of the defendant to make an intelligent decision concerning a plea in connection with the charges pending against him and believes that the defendant may be mentally incapable of entering such a plea and that a determination should be made concerning the defendant's sanity and further concerning his ability to understand the probable consequences of his acts."

Pursuant to this motion the trial judge, on that same day, ordered the defendant committed to the State Hospital in Raleigh to undergo psychiatric and other examinations incident to the provisions of G.S. 15A-1002. On 21 October 1975 the North Carolina Department of Mental Health (Dorothea Dix Hospital) issued a Diagnostic Conference Report and Discharge Summary which contained the following findings:

"PSYCHOLOGICAL TESTING: Mr. Young, according to the Slosson Intelligence Test, is presently functioning in the mild range of mental retardation with an IQ of 67. He gained a score of 25 on the Competency Screening Test which demonstrates his present competency to stand trial

State v. Young

according to National Institute of Mental Health Standards.

SOCIAL HISTORY: Mr. Young relates a long history of excessive drinking, averaging one-fifth of alcohol per day. He was able to describe the events of the alleged crime.

PSYCHIATRIC OPINIONS: Mr. Young is competent to stand trial in that he understands the charges against him, knows the consequences if convicted, and is able to cooperate with his attorney. In my opinion, Mr. Young was responsible for his actions at the time of the alleged crime. According to Mr. Young's account, he was intoxicated to some degree at the time of the alleged crime."

There was no finding or evidence of incapacity. Apparently no hearing was held subsequent to the defendant's commitment and there is no evidence that defendant or defense counsel demanded one or that either objected to the failure of the trial judge to hold such a hearing.

Defendant now, for the first time, objects to the failure of the trial court to hold the hearing prescribed by G.S. 15A-1002 (b) (3) (Cum. Supp. 1975). He first contends that the hearing was mandatory under the statute and that failure to hold such a hearing constitutes reversible error *per se.*

It is true that the statute requires the court to hold a hearing to determine defendant's capacity to proceed if the question is raised. However, as stated in *State v. Gaiten,* 277 N.C. 236, 176 S.E. 2d 778 (1970), "it is a general rule that a defendant may waive the benefit of statutory or constitutional provisions by express consent, failure to assert it in apt time, or by conduct inconsistent with a purpose to insist upon it." Further, this Court held in *State v. Parks,* 290 N.C. 748, 228 S.E. 2d 248 (1976), a recent decision dealing with a failure to hold a hearing on a request for habeas corpus, that:

"A corollary to this rule is that, generally, in order for an appellant to assert a constitutional or statutory right in the appellate courts, the right must have been asserted and the issue raised before the trial court. Further, it must affirmatively appear on the record that the issue was passed upon by the trial court."

[1] In the case before us we find no indication that the failure to hold a hearing under G.S. 15A-1002 (b) (3) (Cum. Supp.

1975) was considered or passed upon by the trial judge. Neither defendant nor defense counsel, although present at trial, questioned the correctness of the diagnostic finding that defendant was competent to stand trial, understood the charges and was able to cooperate with his attorney; and neither objected to the failure to hold the hearing. When arraigned, defendant entered a plea of not guilty. The defense of insanity was not raised. On these facts we hold that defendant's statutory right, under G.S. 15A-1002(b)(3) (Cum. Supp. 1975), to a hearing subsequent to his commitment, was waived by his failure to assert that right. His conduct was inconsistent with a purpose to insist upon a hearing to determine his capacity to proceed. *State v. Gaiten, supra; State v. Parks, supra. But see Featherston v. Clark,* 293 F. Supp. 508 (W.D. Texas 1968), *aff'd sub nom. Featherston v. Mitchell,* 418 F. 2d 582 (5th Cir. 1969), *cert. denied,* 397 U.S. 937 (1970).

[2]     In his second contention under this assignment, defendant argues that failure to hold a hearing deprived him of due process of law. We find this contention unsound. It is true that a conviction cannot stand where defendant lacks capacity to defend himself. *Drope v. Missouri,* 420 U.S. 162, 43 L.Ed. 2d 103, 95 S.Ct. 896 (1975); *Pate v. Robinson,* 383 U.S. 375, 15 L.Ed. 2d 815, 86 S.Ct. 836 (1966). "[A] trial court has a constitutional duty to institute, *sua sponte,* a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent." (Emphasis added.) *Crenshaw v. Wolff,* 504 F. 2d 377 (8th Cir. 1974), *cert. denied,* 420 U.S. 966 (1975). *See Wolf v. United States,* 430 F. 2d 443 (10th Cir. 1970) ("bona fide doubt" as to competency). However, where, as here, the defendant has been committed and examined relevant to his capacity to proceed, and all evidence before the court indicates that he has that capacity, he is not denied due process by the failure of the trial judge to hold a hearing subsequent to the commitment proceedings. *See United States v. Dworshak,* 514 F. 2d 716 (8th Cir. 1975); *Jones v. Swenson,* 469 F. 2d 535 (8th Cir. 1972), *cert. denied,* 412 U.S. 929 (1973); *United States ex rel. Roth v. Zelker,* 455 F. 2d 1105 (2d Cir. 1972), *cert. denied,* 408 U.S. 927 (1972); *United States ex rel. Evans v. La Vallee,* 446 F. 2d 782 (2d Cir. 1971), *cert. denied,* 404 U.S. 1020 (1972); *Green v. United States,* 389 F. 2d 949 (D.C. Cir. 1967); *accord, United States v. Knohl,* 379 F. 2d 427 (2d Cir. 1967), *cert. denied,* 389 U.S. 973 (1967).

Therefore this contention is without merit and defendant's first assignment of error is overruled.

Defendant contends the court erred in permitting the private prosecutor to propound eighty-seven leading questions during the course of the trial.

For the sake of brevity, we do not reproduce every question. The following, specifically mentioned by defendant's brief, will suffice as examples:

(1) What, if anything, was Chester Graham doing with respect to closing his place?

(2) Could it have been as late as 2:30 in the morning?

(3) After you got into the car, did you hear Charles Dewitt Young make a statement to you as to where he was going to stay that night?

(4) Were there any savings books in the automobile, and, if so, where were they found?

(5) And was the redness of that cap what attracted your attention to it?

(6) After you lifted or assisted in lifting the deceased in the trunk of his own car, what, if anything, did the defendant, Charles Dewitt Young, then say to you or instruct you to do?

[3] A leading question is one that suggests the desired answer. Frequently, questions that may be answered "yes" or "no" are regarded as leading. 1 Stansbury's North Carolina Evidence (Brandis rev. 1973) § 31, and cases cited. Even so, the trial court has discretionary authority to permit leading questions in proper instances, *State v. Staten,* 271 N.C. 600, 157 S.E. 2d 225 (1967); *State v. Painter,* 265 N.C. 277, 144 S.E. 2d 6 (1965), and absent a showing of prejudice the discretionary action of the trial court will not be disturbed. *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974); *State v. Pearson,* 258 N.C. 188, 128 S.E. 2d 251 (1962); *State v. Cranfield,* 238 N.C. 110, 76 S.E. 2d 353 (1953). If the testimony is competent and there is no abuse of discretion, defendant's exception thereto will not be sustained. *State v. Brunson,* 287 N.C. 436, 215 S.E. 2d 94 (1975); *State v. Edwards,* 286 N.C. 140, 209 S.E. 2d 789 (1974). Here, no abuse of judicial discretion is shown.

Situations in which leading questions are permissible are summarized by Justice Branch in *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974), as follows:

"The trial judge in ruling on leading questions is aided by certain guidelines which have evolved over the years to the effect that counsel should be allowed to lead his witness on direct examination when the witness is: (1) hostile or unwilling to testify, (2) has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where (3) the inquiry is into a subject of delicate nature such as sexual matters, (4) the witness is called to contradict the testimony of prior witnesses, (5) the examiner seeks to aid the witness' recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, (6) the questions are asked for securing preliminary or introductory testimony, (7) the examiner directs attention to the subject at hand without suggesting answers and (8) the mode of questioning is best calculated to elicit the truth. [Citations omitted.]"

We have examined each exception and find that of the eighty-seven alleged leading questions, twenty-nine are not leading, two are not questions, nine were admitted elsewhere without objection, fourteen merely directed the attention of the witness to the subject at hand without suggesting answers, fourteen sought to elicit preliminary or introductory testimony, and one sought to aid the recollection of the witness when he had exhausted his memory without stating the particular matter required. The remaining eighteen, while possibly leading, could in no way be considered prejudicial. Defendant's second assignment of error is overruled.

Defendant's third assignment is grounded on the contention that the trial court erroneously permitted the State to offer inflammatory photographs of the corpse and exhibit them to the jury.

[4] It is settled law in this State that a witness may use a photograph to illustrate his testimony and make it more intelligible to the court and jury; and if a photograph accurately depicts that which it purports to show and is relevant and material, the fact that it is gory or gruesome, or otherwise may tend to arouse prejudice, does not render it inadmissible. 1

Stansbury's North Carolina Evidence (Brandis rev. 1973) § 34; *State v. Frazier*, 280 N.C. 181, 185 S.E. 2d 652 (1972) ; *State v. Doss*, 279 N.C. 413, 183 S.E. 2d 671 (1971) ; *State v. Atkinson*, 278 N.C. 168, 179 S.E. 2d 410 (1971) ; *State v. Barrow*, 276 N.C. 381, 172 S.E. 2d 512 (1970).

[5]   Here, the trial judge gave an appropriate limiting instruction to the effect that the photographs were admitted for illustrative purposes only. The pictures themselves were gruesome but, as such, they only reflected the relentless brutality of the crime. All were introduced to illustrate specific and relevant testimony concerning distinct aspects of the wounds and mutilations inflicted upon the victim. Excessive or unnecessarily repetitive use of these photographs is not shown. *State v. Spaulding*, 288 N.C. 397, 219 S.E. 2d 178 (1975) ; *State v. Bock*, 288 N.C. 145, 217 S.E. 2d 513 (1975) ; *State v. Frazier, supra; State v. Atkinson, supra*. Defendant's third assignment is not sustained.

[6]   For his fourth assignment of error defendant contends the trial court erroneously allowed irrelevant and inflammatory testimony concerning the physical state of the corpse. Defendant's exceptions Nos. 186 through 192, inclusive, embrace the challenged evidence given by Deputy Sheriff Willie Lee. The following is illustrative:

  "MR. BRITT: What, if anything, did you observe with respect to flies about the body of the deceased when you observed it?

  MR. LEE: Well, the blow flies had got at the body and started to work it.

  MR. BRITT: What do you mean, 'the blow flies'?

  MR. LEE: Flies that get into the flesh after it rots.

  MR. BRITT: What color was the blow flies?

  MR. LEE: Green.

  MR. BRITT: How long was the blow flies? Indicate on your finger if you can.

  MR. LEE: They were about that big, about as big as the end of your finger."

  In like vein, in answer to the prosecutor's questions, Mr. Lee testified that the flies were about an inch long and were

making a noise similar to a swarm of bees. These seven questions and answers concerning the flies were admitted over defendant's objection and exception in each instance.

The potentially inflammatory testimony represented by the foregoing reproduction of it should have been excluded. It was clearly improper. Nothing in the questions or answers could aid the State in establishing defendant's guilt or in rebutting any theory of the defense. The court erred when it failed to sustain defendant's objections thereto. *State v. Johnson,* 270 N.C. 215, 154 S.E. 2d 48 (1967); *State v. Gaskins,* 252 N.C. 46, 112 S.E. 2d 745 (1960). For the reasons which follow, however, we think admission of this evidence was harmless error beyond a reasonable doubt.

Dr. Marvin Thompson performed a postmortem examination upon the body of Carl N. Dowless and had already testified as a witness for the State when the foregoing evidence was elicited. During his testimony, Dr. Thompson testified that there were numerous penetrating skin defects on the body, including a long deep cut on the back of the left arm and a bluish discoloration of the skin on the right forehead. Continuing, Dr. Thompson said: "The body had maggots on the skin surface . . . By maggots, I mean these were insects and eggs, unhatched eggs, of these organisms on the skin surface. . . . I spoke a few moments ago of maggots on the body of the deceased. A maggot is just the—one of the phases of the development of a fly. A fly lays the egg; the egg hatches into the maggot. The maggot uses the body tissue as its source of nourishment. It's a part of a natural decaying process." This evidence was admitted without objection.

The murder of which defendant stands convicted was, in itself, unnecessarily gruesome. The corpse was extensively mutilated by numerous stabs and slashes of the deadly knife. This mutilation is vividly revealed by the illustrative photographs properly admitted into evidence. In light of these facts, together with the testimony of Dr. Thompson without objection, we perceive little or no additional inflammatory effect brought on by the testimony concerning the flies. The properly admitted evidence is so overwhelming, and the prejudicial effect of the evidence concerning the flies is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper evidence was harmless error. In our opinion there is no reason-

able possibility that the evidence complained of might have contributed to the conviction, or that a different result likely would have ensued had the evidence been excluded. *Schneble v. Florida,* 405 U.S. 427, 31 L.Ed. 2d 340, 92 S.Ct. 1056 (1972); *Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963); *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972); *State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115 (1971); *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969). Defendant's fourth assignment of error is overruled.

**[7]** In his fifth and final assignment of error, defendant alleges the trial court erred in failing to strike *ex mero motu* certain remarks by the private prosecutor in his closing argument to the jury. The statement, objected to for the first time on appeal, comprises only a few lines from forty-one pages in the record devoted to the closing arguments for the State. It reads as follows:

> "Ladies and gentlemen of the jury, I want to tell you what Solicitor Lester Chalmers told the jury in Raleigh recently on a case. 'I want you to find this defendant guilty as charged; and if you find this man is not guilty, I hope that each of you can have the privilege of taking him home with you.'"

We note at the outset that defendant did not object to these remarks during the trial. It is the general rule that an objection not made in apt time is waived. *State v. Strickland,* 290 N.C. 169, 225 S.E. 2d 531 (1976); *State v. Davis* and *State v. Fish,* 284 N.C. 701, 202 S.E. 2d 770 (1974). Ordinarily, the effect of improper argument may be removed by curative instructions by the trial court, *State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897 (1970), since it is presumed that jurors will understand and comply with the instructions of the court. *State v. Long,* 280 N.C. 633, 187 S.E. 2d 47 (1972). Had defendant found the prosecutor's remarks objectionable at the time they were made, and interposed timely objection, the trial judge would have been afforded an opportunity to consider the matter and, if required, censure the improper argument and give curative instructions to the jury. It is only when the impropriety is gross that it is proper for the trial judge to intervene *ex mero motu* and correct the abuse. *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975); *State v. Miller,* 271 N.C. 646, 157 S.E. 2d 335 (1967). Some transgressions are so gross and

their effect so highly prejudicial that no curative instruction will suffice to remove the adverse impression from the minds of the jurors. *See State v. White,* 286 N.C. 395, 211 S.E. 2d 445 (1975); *State v. Hines,* 286 N.C. 377, 211 S.E. 2d 201 (1975); *State v. Roach,* 248 N.C. 63, 102 S.E. 2d 413 (1958); *State v. Smith,* 240 N.C. 631, 83 S.E. 2d 656 (1954). In such instances a new trial is required. *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283 (1975). In light of these rules, we hold that the challenged remarks of the private prosecutor, while ill advised and of dubious efficacy in favorably influencing the jury, are not so gross as to suggest intervention by the court on its own motion. Therefore this assignment is overruled.

**[8]** The Court notes *ex mero motu* that in *Woodson v. North Carolina,* ____ U.S. ____, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (decided 2 July 1976), the United States Supreme Court invalidated the death penalty provisions of G.S. 14-17 (Cum. Supp. 1975), the statute under which defendant was indicted, convicted and sentenced to death. Therefore, by authority of the provisions of the 1973 Session Laws, chapter 1201, section 7 (1974 Session), a sentence of life imprisonment is substituted in lieu of the death penalty in this case.

Our examination of the entire record discloses no error affecting the validity of the verdict returned by the jury. The trial and verdict must therefore be upheld. To the end that a sentence of life imprisonment may be substituted in lieu of the death sentence heretofore imposed, the case is remanded to the Superior Court of Bladen County with directions (1) that the presiding judge, without requiring the presence of defendant, enter a judgment imposing life imprisonment for the first degree murder of which defendant has been convicted; and (2) that in accordance with said judgment the clerk of superior court issue a commitment in substitution for the commitment heretofore issued. It is further ordered that the clerk furnish to defendant and his counsel a copy of the judgment and commitment as revised in accordance with this opinion.

No error in the verdict.

Death sentence vacated.