IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1150

 Filed: 17 December 2019

Mitchell County, Nos. 15 CRS 50346, 50474, 16 CRS 28

STATE OF NORTH CAROLINA

 v.

HARLEY AARON ALLEN

 Appeal by defendant by petition for writ of certiorari from judgments entered

9 February 2018 by Judge Alan Z. Thornburg in Mitchell County Superior Court.

Heard in the Court of Appeals 7 August 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Barry H.
 Bloch, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Hannah H.
 Love, for defendant-appellant.

 ZACHARY, Judge.

 Defendant Harley Aaron Allen appeals from judgments entered upon jury

verdicts finding him guilty of selling buprenorphine, delivering buprenorphine, and

possession of buprenorphine with intent to sell or deliver. After careful review, we

remand for further proceedings.

 Background
 STATE V. ALLEN

 Opinion of the Court

 Defendant, born in 1986, is intellectually disabled.1 Defendant was also subject

to “severe abuse and neglect” during his early childhood, which further impaired his

development. Defendant received special education assistance throughout his

schooling, and although he received a certificate of attendance upon completion of the

12th grade, he is unable to live independently or maintain a job because of his

intellectual disability. In addition to his intellectual disabilities, for which he receives

disability benefits, Defendant suffers from opiate abuse, and has been diagnosed with

bipolar disorder.

 On 22 October 2015, Defendant was arrested for allegedly having sold a single

pill of buprenorphine—a Schedule IV controlled substance and opium derivative—to

a confidential informant for the Mitchell County Sheriff’s Office. Defendant was

subsequently indicted for (1) sale, (2) delivery, and (3) possession with the intent to

sell or deliver buprenorphine, a Schedule IV controlled substance; and (4) keeping or

maintaining a vehicle for the purpose of selling buprenorphine. Defendant was also

indicted for having attained the status of an habitual felon.

 During the period between his arrest and trial, Defendant was involuntarily

committed on three separate occasions and was twice found “not capable of

proceeding” to trial. After Defendant’s first involuntary commitment, a forensic

 1 A 2017 forensic evaluation noted that “although available IQ scoring seems to place
[Defendant] in the borderline to mild intellectual disability range,” various other factors exist that
“contribute to him being more impaired than IQ scores alone . . . would suggest.”

 2
 STATE V. ALLEN

 Opinion of the Court

screener conducted a psychiatric evaluation on 21 November 2016 and opined that

Defendant’s “prospects of restorability [we]re limited,” due to his “profound fund of

knowledge deficits.” On 28 February 2017, Defendant was again found incapable of

proceeding. Following Defendant’s third involuntary commitment, a psychiatric

report dated June 2017 noted that Defendant had “regained his capacity to proceed”

to trial. Based on that report, and despite defense counsel’s sentiments to the

contrary, on 23 August 2017, the trial court found that Defendant “currently ha[d]

the capacity to proceed” to trial.2 The case came on for trial nearly six months after

the trial court’s competency determination, and eight months after Defendant’s final

psychiatric evaluation.

 Defendant’s trial commenced on 8 February 2018 in Mitchell County Superior

Court before the Honorable Alan Z. Thornburg. At the trial’s conclusion, the jury

found Defendant guilty of selling buprenorphine, delivering buprenorphine, and

possession of buprenorphine with the intent to sell or deliver. The jury found

Defendant not guilty of keeping or maintaining a vehicle for the purpose of selling

buprenorphine. Defendant subsequently pleaded guilty to having attained the status

of an habitual felon. The trial court arrested judgment on Defendant’s conviction for

delivering a controlled substance,3 and sentenced Defendant for the remaining two

 2 It is unclear from the record before this Court whether one of the parties moved for the trial
court to assess Defendant’s capacity to proceed, or whether the trial court did so sua sponte.
 3 The trial court’s form arresting judgment incorrectly states that the court was arresting

judgment on Defendant’s conviction for selling a controlled substance.

 3
 STATE V. ALLEN

 Opinion of the Court

convictions to concurrent terms of 58 to 80 months and 8 to 19 months in the custody

of the North Carolina Division of Adult Correction.

 On 9 February 2018, Defendant filed a procedurally inadequate pro se notice

of appeal. Thereafter, Defendant filed a petition for writ of certiorari asking this

Court to review the merits of his appeal, which we allowed by order entered 10 July

2019.

 Standard of Review

 “[T]he conviction of an accused person while he is legally incompetent [to

proceed to trial] violates due process[.]” State v. Taylor, 298 N.C. 405, 410, 259 S.E.2d

502, 505 (1979) (citation omitted). “The defendant bears the burden of demonstrating

he is incompetent [to proceed].” State v. McClain, 169 N.C. App. 657, 663, 610 S.E.2d

783, 787 (2005) (citation omitted). “The [trial] court’s findings of fact as to [the]

defendant’s mental capacity are conclusive on appeal if supported by the evidence.”

State v. Baker, 312 N.C. 34, 43, 320 S.E.2d 670, 677 (1984) (internal citations

omitted). We review a trial court’s determination of a defendant’s competency to

proceed under an abuse of discretion standard. See McClain, 169 N.C. App. at 663,

610 S.E.2d at 787. “[T]he trial court’s decision that [the] defendant was competent to

stand trial will not be overturned, absent a showing that the trial judge abused his

discretion.” Id.

 Discussion

 4
 STATE V. ALLEN

 Opinion of the Court

 I. Competency Hearing

 Defendant argues that, “[i]n light of [his] mental health history and prior

findings of incompetence, the trial court erred by failing to hold a competence hearing

before starting [his] trial” six months after he was found to be competent. We agree.

 N.C. Gen. Stat. § 15A-1001(a) (2017) provides that:

 No person may be tried, convicted, sentenced, or punished
 for a crime when by reason of mental illness or defect he is
 unable to understand the nature and object of the
 proceedings against him, to comprehend his own situation
 in reference to the proceedings, or to assist in his defense
 in a rational or reasonable manner. This condition is
 hereinafter referred to as “incapacity to proceed.”

“If a defendant is deficient under any of these tests he or she does not have the

capacity to proceed.” State v. Mobley, 251 N.C. App. 665, 667, 795 S.E.2d 437, 439

(2017) (citations and internal quotation marks omitted).

 “A defendant’s competency to stand trial is not necessarily static, but can

change over even brief periods of time. For this reason, a defendant’s competency is

assessed at the time of trial.” Id. at 675, 795 S.E.2d at 443 (internal citations and

quotation marks omitted). Nevertheless, “[t]he question of the capacity of the

defendant to proceed may be raised at any time on motion by the prosecutor, the

defendant, the defense counsel, or the court.” N.C. Gen. Stat. § 15A-1002(a).

 Whenever there is a bona fide doubt as to the defendant’s competency to

proceed to trial, the trial court is required to hold a competency hearing. Mobley, 251

 5
 STATE V. ALLEN

 Opinion of the Court

N.C. App. at 668, 795 S.E.2d at 439. The trial court “has a constitutional duty to

institute, sua sponte, a competency hearing if there is substantial evidence before the

court indicating that the accused may be mentally incompetent [to stand trial].” Id.

(internal citations omitted).

 The trial court’s failure to “protect a defendant’s right not to be tried or

convicted while [incompetent to proceed] deprives him of his due process right to a

fair trial.” State v. McRae, 139 N.C. App. 387, 389, 533 S.E.2d 557, 559 (2000)

[hereinafter “McRae I”].

 In the present case, there was substantial evidence before the trial court that

Defendant might have been incompetent to stand trial. It is evident that the trial

court correctly recognized its duty to assess Defendant’s capacity to proceed, and did

so approximately six months prior to trial, on 23 August 2017. However, the

competency hearing should have been held closer to trial.

 Various factors can raise a bona fide doubt as to the defendant’s competency to

proceed to trial. “Evidence of a defendant’s irrational behavior, his demeanor at trial,

and any prior medical opinion on competence to stand trial are all relevant to a bona

fide doubt inquiry.” Id. at 390, 533 S.E.2d at 559. Here, Defendant’s lengthy and

varied history of severe mental health issues and cognitive disabilities—which led to

repeated involuntary commitments and psychiatric evaluations—together with

defense counsel’s reluctance to agree with the evaluating physician’s report that

 6
 STATE V. ALLEN

 Opinion of the Court

Defendant was capable of proceeding to trial, was sufficient to raise a bona fide doubt

as to Defendant’s competency at the time of trial, thereby triggering the trial court’s

duty to conduct a hearing immediately prior to trial.

 As previously mentioned, Defendant was involuntarily committed three times

during the period between his 22 October 2015 arrest and 8 February 2018 trial, due

to his severe mental health issues. When Defendant was discharged from his second

involuntary commitment in February 2017, the forensic screener’s psychiatric report

noted that Defendant’s mental health diagnoses included “Methamphetamine Use

Disorder, Severe, Opioid Use Disorder, Severe, Adjustment Disorder with Depressed

Mood, Antisocial Personality Disorder/Traits, [and] Suicidal Ideation, Resolved.”

Additional reports established that Defendant had also been diagnosed with bipolar

disorder, “Attention Deficit/Hyperactivity Disorder Not Otherwise Specified, Mood

Disorder Not Otherwise Specified, Polysubstance/Dependence, and a Personality

Disorder Not Otherwise Specified.”

 The psychiatric reports in the record also demonstrate Defendant’s history of

noncompliance with mental health treatment. Defendant’s November 2016

evaluation noted that “Mission Hospital currently has plans to engage [Defendant]

in a long-term inpatient treatment.” Three months later, Defendant’s February 2017

report indicated that Defendant was not consistently compliant with mental health

treatment recommendations. Specifically, it detailed that Defendant (i) “has never

 7
 STATE V. ALLEN

 Opinion of the Court

been compliant [or] consistent with medication treatment (either not taking any

medication or taking too much at one time) or mental health follow through”; (ii) that

“[a]s an adult there is no clear record of [Defendant] consistently being compliant

with mental health treatment recommendations”; and (iii) that Defendant “has not

been compliant with treatment in an outpatient setting, and his last two

hospitalizations in 2016 were on an involuntary basis, where he appeared to lose

behavioral control, threatening suicide and becoming confrontational.”

 It is also well-documented that Defendant has a significant intellectual

disability. As previously noted, the February 2017 psychiatric evaluation placed

Defendant “in the borderline to mild intellectual disability range” based on available

IQ scoring criteria. However, the evaluation further stated that when combined,

certain of Defendant’s conditions—including his significantly impaired adaptive

functioning, attention and learning deficits, difficulty moderating his own behavior,

and a mood disorder—actually contributed to Defendant “being more impaired than

IQ scores alone . . . would suggest.” One psychiatric report noted that Defendant’s

“cognitive deficits . . . have been with him since early childhood, . . . [that] he will

likely struggle with them for the remainder of his life[,]” and that “[g]iven the nature

of his impairments, . . . [Defendant’s] prospects of restorability are limited.” The

report indicated that Defendant’s cognitive disabilities were believed to stem, in part,

from “extreme abuse and neglect” that he suffered before his second birthday.

 8
 STATE V. ALLEN

 Opinion of the Court

 Additionally, although he receives disability benefits as a result of his

intellectual disability, Defendant “did not know the amount of the award[,]” which

the examiner noted was “somewhat rare in [his] experience[.]” The report further

noted that Defendant’s “mom is his representative payee because he is unable to

manage his own finances.”

 During the period between his arrest and trial, Defendant was twice found to

be incapable of proceeding to trial. See McRae I, 139 N.C. App. at 391, 533 S.E.2d at

560 (“In our opinion, the numerous psychiatric evaluations of [the] defendant’s

competency that were conducted before trial with various findings and expressions of

concern about the temporal nature of [the] defendant’s competency [to proceed] raised

a bona fide doubt as to [the] defendant’s competency at the time of his second trial.”).

 Only one of the reports in which Defendant was found incapable of proceeding

to trial noted Defendant’s appearance and conduct. In particular, it noted that

Defendant “was an average-sized young adult white male who appeared to be in no

acute physical distress, displayed no unusual or bizarre mannerisms, and had no

obvious physical deformities.” Defendant’s “beard and haircut were neatly groomed”;

he was “initially . . . fairly soft-spoken, but when encouraged to speak up, he did”; and

he “maintained intermittent eye contact.” This forensic screener’s notes demonstrate

that, despite the ultimate determination of incompetence, Defendant’s physical

appearance did not immediately evince his lack of capacity to proceed to trial.

 9
 STATE V. ALLEN

 Opinion of the Court

 In addition, during the final competency hearing six months before trial,

defense counsel expressed reservations concerning Defendant’s competency to

proceed.

 [C]ourts often look to whether the defense attorney has
 disputed competency before trial as evidence of
 competency. Because defense counsel is usually in the best
 position to determine that the defendant is able to
 understand the proceedings and assist in his defense, it is
 well established that significant weight is afforded to a
 defense counsel’s representation that his client is
 competent.

State v. McRae, 163 N.C. App. 359, 369, 594 S.E.2d 71, 78, disc. review denied, 358

N.C. 548, 599 S.E.2d 911 (2004) [hereinafter “McRae II”].

 At the 23 August 2017 hearing in the instant case, the trial court asked

Defendant’s attorney whether he agreed with “the doctor’s assessment of

[Defendant’s] ability to understand the nature of the proceedings.” While

acknowledging that he observed some improvement in Defendant’s condition, counsel

nevertheless expressed doubt about Defendant’s capacity to stand trial:

 THE COURT: All right, [defense counsel], have you had an
 opportunity to review the [psychiatric evaluation]?

 [DEFENSE COUNSEL:] I have, Your Honor.

 THE COURT: And do you agree with the doctor’s
 assessment of [Defendant’s] ability to understand the
 nature of the proceedings against him?

 [DEFENSE COUNSEL:] Your Honor, . . . I will leave that
 in the Court’s discretion based on the report. I spoke with

 10
 STATE V. ALLEN

 Opinion of the Court

[Defendant]. I can’t tell with the time I’ve spent with him
– I can tell a lot of changes in him. . . . [W]e’ve discussed
his case and he does seem to understand more of what’s
going on than he did.

THE COURT: Has he been able to communicate his
thoughts and feelings to you?

[DEFENSE COUNSEL:] Yes, sir.

THE COURT: So if you don’t agree with this report, I want
you to tell me what part you don’t agree with?

[DEFENSE COUNSEL:] Well . . . I don’t agree that
[Defendant is] necessarily capable. . . . [H]e goes in two or
three different directions sometimes . . . as far as talking to
him. He does understand the charges now. He understands
what he’s charged . . . we’ve talked a couple of times since
this report since he was released. He does understand what
he is facing as far as the felonies, and when he was here
the first time he didn’t understand that. I think that . . . it
may be that . . . they have improved his capability.

 [Defendant] is on medication now and he is taking
that. He tells me he is taking that on a regular basis. And
. . . there is some question in my mind, but I’m not a doctor.
I mean, there is some question in my mind because I’ve
dealt with [Defendant] for a number of years. I handled a
case for him about two years ago and I’ve noticed when he
came back earlier, earlier this year, the first time in court
that he . . . wasn’t tracking. We were out there and he . . .
didn’t understand what was going on. He kept asking me
over and over in different ways what was going on. He is
not doing that now.

 I don’t really feel like I’m in a position to judge
necessarily if I – I’m not a doctor to judge his condition. But
we just ask the Court to look at the report and make a
determination, to make a finding . . . based on that. . . .
[T]here’s really nothing specific that I can disagree with in

 11
 STATE V. ALLEN

 Opinion of the Court

 the report because I have seen some improvement in his
 condition.

 THE COURT: All right, [Defendant], you having any
 trouble thinking today? Do you feel confused in anyway
 today?

 DEFENDANT: No, sir.

 THE COURT: You been able to talk with your attorney
 about your case?

 DEFENDANT: Yes, sir.

 THE COURT: Has your attorney gone over the [psychiatric
 report] with you?

 DEFENDANT: Yes, sir.

 THE COURT: Are you in agreement with that report?

 DEFENDANT: Yeah, yes, sir.

 THE COURT: All right, what says the State?

 [THE STATE:] Your Honor, we don’t have any reason to
 believe he is not competent.

 THE COURT: All right, I will find that the defendant does
 currently have the capacity to proceed.

 Defense counsel also addressed the issue of capacity during sentencing, after

Defendant was found guilty at trial:

 [M]y client is on disability. He’s been on that . . . for years.
 He has a very low – he’s a very low-functioning individual.
 His IQ is somewhere around 82. You can see from the
 record, . . . that he . . . was found to be incompetent and
 then found to be competent at a later date when he was

 12
 STATE V. ALLEN

 Opinion of the Court

 sent down to Broughton [Hospital] for some time.

 Nonetheless, as our dissenting colleague correctly states, a defendant’s

behavior during the course of trial may also be a relevant consideration in a bona fide

doubt inquiry. See McRae I, 139 N.C. App. at 390, 533 S.E.2d at 559. However, a

defendant’s amiable acquiescence in a colloquy with the trial court is not necessarily

indicative of the individual’s capacity to stand trial, particularly where, as here, there

exists substantial evidence of the defendant’s long history of myriad complex mental

health issues.

 A defendant need only answer a few brief questions in order for his plea to be

accepted by the trial court. Here, Defendant’s brief responses to those few questions

were sufficient to raise doubts about his capacity to stand trial, and therefore

warranted further inquiry by the court. In the present case, after the jury rendered

its verdicts, but before sentencing, Defendant pleaded guilty to attaining the status

of an habitual felon. The following relevant portions of the plea colloquy between the

trial court and Defendant should have raised a bona fide doubt as to Defendant’s

capacity to proceed:

 THE COURT: At what grade level can you read and write?

 [DEFENDANT:] Second or third.

 THE COURT: . . . Are you now under the influence of any
 alcohol, drugs, narcotics, medicines, pills or any other
 substances?

 13
 STATE V. ALLEN

 Opinion of the Court

 [DEFENDANT:] No, sir.

 THE COURT: When was the last time that you used or
 consumed any such substance?

 [DEFENDANT:] I can’t really remember. Probably about
 two or three months ago.

 Minutes later, at sentencing, Defendant testified that he had “[n]ever failed a

drug test[,]” and was “still currently going to RHA three days a week. That’s through

Broughton [Hospital], kind of intensive outpatient.” Stated another way, Defendant

told the trial court that he was not presently taking any medication, despite his

enrollment in an intensive outpatient program, which he was still attending three

days a week.

 These statements—combined with Defendant’s well-documented history of

drug abuse, as well as his noncompliance with medication and outpatient treatment

recommendations—while perhaps not indicative of irrational or erratic behavior,

nonetheless tend to support defense counsel’s concerns at the 23 August 2017

hearing.

 Defendant’s brief communication with the trial court during the plea colloquy

also raises doubts as to his general understanding of the proceedings:

 THE COURT: Have you agreed to plead guilty as part of a
 plea arrangement?

 [DEFENDANT:] Yes, sir.

 THE COURT: You are pleading guilty – you pled guilty to

 14
 STATE V. ALLEN

 Opinion of the Court

 attaining the status of habitual felon, but was there
 actually a plea arrangement?

 [DEFENDANT:] No.

 [DEFENSE COUNSEL:] There’s not a plea arrangement,
 Your Honor.

 THE COURT: So let me ask you that again. Have you
 agreed to plead guilty as part of a plea arrangement?

 [DEFENDANT:] No, sir.

 “A guilty plea must be made knowingly and voluntarily and the record must

affirmatively show it on its face.” State v. Wilkins, 131 N.C. App. 220, 224, 506 S.E.2d

274, 277 (1998) (citing Boykin v. Alabama, 395 U.S. 238, 23 L. Ed. 2d 274 (1969)).

Again, Defendant was twice found incompetent to stand trial during the pendency of

this case. The second time, the forensic screeners determined that Defendant was

“currently not capable of proceeding” because he did “not have the capacity to

understand his current charges, potential penalties and d[id] not have the ability to

participate in a meaningful way in his legal proceedings and work with this attorney

in an affirmative way.”

 Six months later, on 23 August 2017, Defendant’s attorney opined at another

competency hearing that for the first time, Defendant seemed to understand the

charges against him. However, as the record before us establishes, much can happen

in six months. Indeed, Defendant was found incompetent and then competent in a

period of six months. It should not strain credulity, then, to suggest that the opposite

 15
 STATE V. ALLEN

 Opinion of the Court

could have occurred during the six months between Defendant’s 23 August 2017

competency hearing and his 8 February 2018 trial.

 As this Court has observed, “[a] defendant’s competency to stand trial is not

necessarily static, but can change over even brief periods of time.” Mobley, 251 N.C.

App. at 675, 795 S.E.2d at 443. Accordingly, the trial court must evaluate the

defendant’s competency to proceed at the time of trial. State v. Cooper, 286 N.C. 549,

565, 213 S.E.2d 305, 316 (1975) (noting that a defendant’s competency to proceed is

assessed “at the time of trial”).

 Although Defendant’s June 2017 psychiatric evaluation indicated that he was

competent to proceed to trial, that evaluation was not current, and may not have

accurately reflected Defendant’s mental state at trial in February 2018. See State v.

Silvers, 323 N.C. 646, 654-55, 374 S.E.2d 858, 864 (1989) (vacating a defendant’s

conviction where the trial court, in evaluating the defendant’s competency to stand

trial, excluded testimony of witnesses who had recently observed the defendant’s

condition, and wholly relied on two psychiatric reports written three and five months

prior to the hearing). The record before the trial court established that Defendant

“suffered from lifelong cognitive defects, mild mental retardation, and mental

illness,” together with frequent, severe, and varied mental health issues during the

period between Defendant’s arrest and trial. Consequently, there was a legitimate

 16
 STATE V. ALLEN

 Opinion of the Court

question as to whether the psychiatric evaluation accurately reflected Defendant’s

capacity eight months later.

 The dissent maintains that the trial court would have had a duty to hold

another competency hearing “if there was any indication that Defendant had

relapsed[,]” but was not required to do so, because neither Defendant nor his counsel

raised “any concern that Defendant was incapable of proceeding or participating in

his own defense.” However, the decision to inquire into a defendant’s competency to

proceed is not shouldered solely by the Defendant or his attorney. See, e.g., Mobley,

251 N.C. App. at 668, 795 S.E.2d at 439 (explaining that the trial court “has a

constitutional duty to institute, sua sponte, a competency hearing, if there is

substantial evidence before the court indicating that the accused may be mentally

incompetent” to stand trial. (internal citations omitted)); N.C. Gen. Stat. § 15A-

1002(a) (“The question of the capacity of the defendant to proceed may be raised at

any time on motion by the prosecutor, the defendant, the defense counsel, or the

court.”).

 The trial court properly determined that it needed to assess Defendant’s

competency to proceed. However, the time for the trial court to make such an

assessment was immediately prior to trial, not more than six months earlier. See

Mobley, 251 N.C. App. at 675, 795 S.E.2d at 443. Accordingly, the trial court erred in

 17
 STATE V. ALLEN

 Opinion of the Court

failing to determine whether, at the time of trial, Defendant was competent to

proceed.

 II. Clerical Errors

 Defendant further contends, and the State concedes, that “[t]wo clerical errors

require remand for correction.” We agree.

 Defendant first observes that “[t]he trial court’s written order arresting

judgment erroneously indicates the charge of selling a controlled substance was

arrested.” The State concedes that this is a clerical error because the trial court

actually arrested judgment on Defendant’s conviction for delivery of a controlled

substance.

 Defendant next notes that the trial court’s written judgment improperly

classified buprenorphine as a Schedule III controlled substance, because

buprenorphine was classified as a Schedule IV controlled substance on the date of the

offense. Buprenorphine was classified as a Schedule IV controlled substance until

N.C. Gen. Stat. § 90-91(d)(9) was amended by 2017 N.C. Sess. Law 115. Again, the

State concedes that this is a clerical error.

 Thus, in order that “the record speak the truth,” the errors must be corrected

on remand. State v. May, 207 N.C. App. 260, 263, 700 S.E.2d 42, 44 (2010) (internal

quotation marks omitted).

 Conclusion

 18
 STATE V. ALLEN

 Opinion of the Court

 Accordingly, we remand this case for the trial court to conduct a hearing to

determine Defendant’s competency at the time of trial, and to correct the clerical

errors identified herein. “If the trial court determines that a retrospective

determination is still possible, the court should review the evidence which was before

it preceding” Defendant’s trial, including medical records, psychological evaluations,

and any other evidence presented by counsel. McRae I, 139 N.C. App. at 394, 533

S.E.2d at 562. If the trial court “concludes from this retrospective hearing that

[D]efendant was competent at the time of trial, no new trial is required.” Id. However,

if “the trial court determines that a meaningful hearing is no longer possible,

[D]efendant’s conviction must be reversed and a new trial granted when he is

competent to stand trial.” Id.

 REMANDED.

 Judge BROOK concurs.

 Judge DILLON dissents by separate opinion.

 19
 No. COA18-1150 – State v. Allen

 DILLON, Judge, dissenting.

 I believe that Defendant had a fair jury trial, free from reversible error. I do

not believe that Judge Thornburg was required to hold a competency hearing when

the matter was called for trial in February 2018 or at any time during the trial.

Therefore, I respectfully dissent from the majority’s holding granting Defendant a

retrospective competency determination. Nonetheless, as the State concedes, the

matter needs to be remanded for the sole purpose of correcting certain clerical errors

in the judgments.

 In October 2015, Defendant was arrested for a variety of drug offenses. Two

and a half years later, in February 2018, Defendant was tried and convicted.

 As late as a year prior to trial, in February 2017, Defendant was found not to

be mentally competent to stand trial.

 Months later, though, Defendant underwent a psychiatric evaluation in which

it was determined that he had “regained his capacity to proceed.” Shortly thereafter,

in August 2017, just six months prior to trial, the trial court held a hearing and

concluded that Defendant had the capacity to proceed.

 Our Supreme Court has held on a number of occasions that a trial court has

no duty to conduct a competency hearing when a matter is called for trial unless “there

is substantial evidence before the court indicating that the accused may be mentally
 STATE V. ALLEN

 DILLON J., dissenting

incompetent.” State v. Badgett, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2006)

(emphasis in the original).4

 For instance, our Supreme Court has held on more than one occasion that

evidence that the defendant had suffered from mental health issues months prior to

trial does not constitute “substantial evidence” to require a competency hearing,

where during the trial the defendant appears to understand the proceedings and

questions from the trial judge and to be able to participate in his defense.5

 And our Supreme Court has held that a trial court was not required to hold a

competency hearing where the defendant had been evaluated and determined to be

competent a few months prior to trial, the defendant appeared competent at the time

of trial and no concern regarding his competency was raised at the time of trial even

though the evaluation of the defendant before trial was prompted by the concern

expressed by his counsel regarding his competency to stand trial just two months

prior to trial and the trial court ordered the defendant to be committed and evaluated.

 4 This quote appears in a number of other cases with the italicized language emphasized. See,
e.g., State v. King, 353 N.C. 457, 467, 546 S.E.2d 575, 585 (2001); State v. Young, 291 N.C. 562, 568,
231 S.E.2d 577, 581 (1977).
 5 In Badgett, our Supreme Court held that the defendant’s outburst during the trial, his

statement during sentencing implying his desire to be sentenced to death, and his mental health
problems experienced before trial “was outweighed by substantial evidence that the defendant was
competent to stand trial[,]” namely his ability to interact rationally with the trial judge and to work
with his counsel in his defense and by his overall demeanor during the trial. 361 N.C. at 260, 644
S.E.2d at 221.
 In King, our Supreme Court held “that evidence of treatment for depression and suicidal
tendencies several months before trial did not constitute substantial evidence requiring the trial court
to hold a competency hearing.” Badgett, 361 N.C. at 261, 644 S.E.2d at 222 (describing the holding in
King, 353 N.C. at 467, 546 S.E.2d at 585).

 -2-
 STATE V. ALLEN

 DILLON J., dissenting

State v. Young, 291 N.C. 562, 569, 231 S.E.2d 577, 581 (1977). Indeed, in Young, our

Supreme Court held that where a defendant is examined and determined to be

competent even months prior to trial and that nothing comes to the trial court’s

attention to suggest that the defendant’s condition has deteriorated when the matter

is called for trial, the trial court is not required to hold another competency hearing.

Id. at 568, 231 S.E.2d at 581 (“[W]here, as here, the defendant has been committed

and examined relevant to his capacity to proceed, and all evidence before the court

indicates that he has that capacity, he is not denied due process by the failure of the

trial judge to hold a hearing subsequent to the commitment proceedings.”)

 Here, the last evaluation of Defendant before trial indicated that he was

competent to stand trial, as did the trial court’s finding at the last competency hearing

conducted before the trial. And there was no indication “at the time his trial

commenced” that “defendant ‘lacked the capacity to understand the nature and object

of the proceedings against him, to consult with counsel, and to assist in preparing his

defense[.]’” State v. King, 353 N.C. 457, 467, 546 S.E.2d 575, 585 (2001) (quoting

Drope v. Missouri, 420 U.S. 162, 171 (1975). There is every indication that Defendant

was able to participate in his defense. For instance, he engaged in a colloquy with

Judge Thornburg in which he stated that he had made the decision to waive his right

to testify on his own behalf. Further, at no time during the trial did either Defendant,

 -3-
 STATE V. ALLEN

 DILLON J., dissenting

his counsel, or anyone else express any concern regarding Defendant’s competency to

proceed.6

 I do not agree with the majority’s characterization of certain portions of the

trial transcript that Judge Thornburg should have had some doubt about Defendant’s

competency. For instance, I do not agree that Judge Thornburg should have been

concerned that Defendant was not taking his medication when he responded, “No,

sir,” to the trial court’s question, “Are you now under the influence of any alcohol,

drugs, narcotics, medicines, pills or any other substances?” The context of the

question is clearly that Judge Thornburg was asking Defendant if he was under the

influence of some impairing substance that would make him unable to understand

his plea of guilty to attaining the status of a habitual felon. The context, in no way,

indicates that Judge Thornburg was asking if Defendant was still taking his

medication that had been prescribed for him. Indeed, Defendant’s attorney had

already assured Judge Thornburg that Defendant was taking his medication. And,

 6 Defendant’s counsel indicated at trial that his client was much improved and seemed to
understand what was going on and that he was taking his medication. Though he expressed some
concern, he indicated that he was no expert, he did not state that he had seen his client’s condition
deteriorate since the August 2017 determination of competency, and that his concern was based on
how Defendant had behaved prior to August 2017. Unlike the defendant in State v. Hollars, there was
no indication from Defendant’s behavior during the course of the trial, that Defendant’s condition ever
deteriorated. See State v. Hollars, ___ N.C. App. ___, ___, 2019 N.C. App. LEXIS 648, *16-17 (2019)
(noting that during the trial, the defendant’s counsel alerted the court about concerns regarding the
defendant’s capacity). And unlike the defendant in State v. McRae, there was no indication that
Defendant had not taken his medication. State v. McRae, 139 N.C. App. 387, 390, 533 S.E.2d 557, 560
(2000).

 -4-
 STATE V. ALLEN

 DILLON J., dissenting

as the majority points out, Defendant followed up his answer by stating that he was

participating in an “intensive outpatient” program.

 Also, I do not agree that Defendant’s exchange with Judge Thornburg, when

asked about his agreement to plead guilty without a plea arrangement, indicates that

Defendant did not understand what was happening. To the contrary, this exchange

showed that he totally understood. Admittedly, his response, “Yes, sir,” when asked

by Judge Thornburg if he had “agreed to plead guilty as part of a plea arrangement,”

was not technically correct. Though he had agreed to plead guilty, no plea

arrangement had been agreed to. But it is clear that Defendant was merely

responding to the first part of Judge Thornburg’s question, that he had agreed to

plead guilty. For when Judge Thornburg followed up to ask specifically about any

agreement to a plea arrangement, Defendant immediately responded correctly.

 I have reviewed Defendant’s other arguments and conclude that he was

afforded a fair trial, free from reversible error. However, as the State concedes, I

agree that the judgments contain clerical errors; specifically, that it lists the wrong

judgment being arrested and identifies the controlled substance involved as a

Schedule III substance rather than a Schedule IV substance.

 In conclusion, my vote is to find no error in Defendant’s trial, but to remand

the matter to correct certain clerical errors in the judgments.

 -5-