IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-38

No. 8A20

Filed 16 April 2021

STATE OF NORTH CAROLINA

v.

HARLEY AARON ALLEN

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 269 N.C. App. 24 (2019), remanding judgments entered on 9 February 2018 by Judge Alan Z. Thornburg in Superior Court, Mitchell County, for a hearing to determine defendant's competency at the time of trial and to correct clerical errors. Heard in the Supreme Court on 15 February 2021.

*Joshua H. Stein, Attorney General, by Nicholas S. Brod, Assistant Solicitor General, and Ryan Y. Park, Deputy Solicitor General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Katherine Jane Allen, Assistant Appellate Defender, for defendant-appellee.*

ERVIN, Justice.

The issue before us in this case addresses whether defendant Harley Aaron Allen was subjected to a deprivation of his right to liberty without due process of law on the grounds that he was tried for and convicted of committing a criminal offense at a time when he "lack[ed] the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his

defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). The Court of Appeals determined that the trial court had erred by failing to hold a second hearing for the purpose of inquiring into defendant's competence immediately prior to trial even though defendant had been found to be competent at a hearing held six months earlier. After careful consideration of the State's challenge to the Court of Appeals' decision, we hold that the trial court did not err by failing to hold a second competency hearing immediately prior to the beginning of defendant's trial on its own motion. As a result, we reverse the Court of Appeals' decision and remand this case to the Court of Appeals for consideration of defendant's remaining challenge to the validity of the trial court's judgments.

¶ 2        On 22 July 2015, defendant sold a pill containing a derivative of opium known as buprenorphine to a confidential informant. On 22 October 2015, a warrant for arrest charging defendant with selling Subutex, delivering Subutex, and maintain a vehicle for the purpose of keeping or selling Subutex was issued. On 22 February 2016, the Mitchell County grand jury returned bills of indictment charging defendant with possession of Subutex with the intent to sell or deliver and having attained habitual felon status.

¶ 3        On 2 September 2016, defendant's trial counsel filed a motion seeking to have a forensic evaluator appointed for the purpose of assessing defendant's capacity to proceed. On the same day, Judge R. Gregory Horne entered an order allowing

defendant's motion. However, defendant was involuntarily committed to Mission Hospital before the required forensic evaluation could be completed, with this being one of the two instances during 2016 in which defendant's parents petitioned to have defendant involuntarily committed after he "appeared to lose behavioral control, threatening suicide and becoming confrontational" while under the influence of methamphetamine. At the time of defendant's November 2016 hospitalization, the attending medical professionals developed the opinion that substance abuse underlay many of defendant's psychiatric, medical, and social stressors.

¶ 4 During defendant's November 2016 involuntary commitment, forensic psychologist Paul Freedman evaluated defendant in accordance with Judge Horne's order. Based upon information obtained during his evaluation, Mr. Freedman described defendant as "hav[ing] substantial deficits regarding his overall fund of knowledge."[1] More specifically, Mr. Freedman noted that defendant had a very low IQ of approximately 60, had been awarded disability payments as the result of an intellectual disability, and was unable to manage his overall finances, including his disability payments, without assistance. As a result, Mr. Freedman found that defendant suffered from an intellectual disability, memory impairment, and overall neurological dysfunction.

---

[1] According to Mr. Freedman, a person's "fund of knowledge" is "the historically accumulated and culturally developed bodies of knowledge and skills essential for household or individual functioning and well-being."

¶ 5        In addition, Mr. Freedman reported that defendant had "acknowledged that he had previously signed plea agreements without having an understanding of what they contained," with it being unclear to Mr. Freedman "whether [defendant] knew he was facing multiple felony charges in two counties." Furthermore, Mr. Freedman stated that defendant exhibited a serious lack of understanding of the judicial system, having described a judge as "the man you gotta stand in front of" and being unable to say whether the defense attorney was "on his side."

¶ 6        In the course of a phone conversation that Mr. Freedman had with defendant's adoptive mother, defendant's adoptive mother stated that she and her husband had adopted defendant as an infant after he had experienced almost two years of extreme abuse and neglect. In Mr. Freedman's view, the "abuse, detailed to this examiner, that the defendant suffered as an infant necessarily leaves a permanent, tragic, and irrevocable mark," with defendant's cognitive deficits, which had "been with him since early childhood," being conditions that he would "likely struggle with [ ] for the remainder of his life." In light of "the nature of his impairments," Mr. Freedman felt "that [defendant's] prospects of restorability are limited." At the conclusion of his evaluation, Mr. Freedman opined that defendant was not capable of proceeding to trial.

¶ 7        After defendant had been released from Mission Hospital, the State moved on 17 January 2017 that defendant be committed to Butner Central Regional Hospital

for a second evaluation of his capacity to proceed. On the same date, Judge Gary M. Gavenus entered an order granting the State's motion. On 20 February 2017, Dr. Bruce Berger, a forensic psychiatrist, completed a second evaluation of defendant's capacity to proceed.

¶ 8  After the completion of his evaluation, Dr. Berger concluded that defendant had a "profound lack of knowledge" of the court system and that defendant's adaptive functioning was significantly impaired. In Dr. Berger's view, defendant's limited adaptive functioning, when taken "in combination with [defendant's] attention deficits, learning deficits[,] difficult[ies] in moderating his behavior, mood disorder, and possible decrease of day-to-day structure since his marriage, all contribute to him being more impaired than IQ scores alone . . . would suggest." Dr. Berger noted that, when asked what a prosecutor did, defendant had replied that "[h]e and the judge work together," and that, when asked what a "plea bargain" was, defendant had said that it meant that you "[s]ign something." As a result, Dr. Berger determined that defendant was not capable of proceeding to trial.

¶ 9  On 19 April 2017, following the completion of Dr. Berger's competency evaluation, Judge Gavenus entered an order committing defendant to Broughton Hospital for temporary custody and mental health treatment. On 18 May 2017, Monisha Berkowskie, Ph.D., a Senior Psychologist at Broughton Hospital, wrote a letter stating that, in the opinion of defendant's treatment team, defendant had

developed a "strong foundation of rational and factual knowledge of the legal system" following a course of treatment that included medication, educational sessions focused upon the development of an understanding of courtroom procedures, and attendance at Alcoholics Anonymous meetings that were intended to assist defendant in combating his substance abuse problems. In light of these developments, Dr. Berkowskie requested that another capacity evaluation be performed.

¶ 10　　　　On 1 June 2017, Dr. Berger conducted another capacity evaluation of defendant at Broughton Hospital. Dr. Berger noted that, since beginning treatment at Broughton Hospital, defendant had become able to "follow unit routine, advocate for his needs, interact with peers and staff appropriately, and successfully complete activities of daily living independently." In addition, Dr. Berger reported that defendant was able to identify the specific charges that had been lodged against him and understood that he would be sent to prison if found guilty. Similarly, Dr. Berger stated that defendant comprehended the nature of the plea negotiation process and had the ability to explain the roles that defense attorneys, prosecutors, judges, juries, and witnesses played in the judicial system. At the conclusion of his evaluation, Dr. Berger opined that defendant had an improved and nuanced understanding of the court system and was capable of proceeding to trial.

¶ 11　　　　On 23 August 2017, a pre-trial competency hearing was held before Judge Gavenus. In the course of the competency hearing, Judge Gavenus asked defendant's

trial counsel whether he agreed with Dr. Berger's conclusion that defendant was now competent to stand trial. In response, defendant's trial counsel stated that:

> Your Honor, I don't agree that he's necessarily capable. . . . [H]e goes in two or three different directions sometimes as far as -- as far as talking to him. He does understand the charges now. . . . He does understand what he is facing as far as the felonies, and when he was here the first time he didn't understand that. I think that . . . they have improved his capability. . . . I'm not a doctor. I mean, there is some question in my mind because I've dealt with [defendant] for a number of years. . . .
>
> I don't really feel like I'm in a position to judge necessarily if I -- I'm not a doctor to judge his condition. But we just ask the Court to look at the report and make a determination, to make a finding on -- based on that. There's really, there's really nothing specific that I can disagree with in the report because I have seen some improvement in his condition.

In addition, Judge Gavenus had the following colloquy with defendant:

> THE COURT: All right, [defendant], you having any trouble thinking today? Do you feel confused in anyway today?
>
> DEFENDANT: No, sir.
>
> THE COURT: You been able to talk with your attorney about your case?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: Has your attorney gone over the [second] report of Dr. Berger with you?
>
> DEFENDANT: Yes, sir.

THE COURT: Are you in agreement with that report?

DEFENDANT: Yeah, yes, sir.

At the conclusion of the hearing, Judge Gavenus determined that defendant was capable of proceeding to trial.

¶ 12        On 13 November 2017, the Mitchell County grand jury returned original and superseding indictments charging defendant with selling buprenorphine, delivering buprenorphine, maintaining a vehicle for the purpose of selling buprenorphine, possession of buprenorphine with the intent to sell or deliver, and having attained habitual felon status. The charges against defendant came on for trial before the trial court and a jury at the 5 February 2018 criminal session of the Superior Court, Mitchell, County. On 9 February 2018, the jury returned verdicts convicting defendant of selling buprenorphine, delivering buprenorphine, and possessing buprenorphine with the intent to sell or deliver and acquitting defendant of maintaining a vehicle for the purpose of selling buprenorphine.

¶ 13        After the jury returned these verdicts, defendant entered a guilty plea to having attained habitual felon status. In the course of accepting defendant's guilty plea, the trial court directly addressed defendant for the purpose of ensuring that he was acting in a knowing and voluntary manner. Among other things, the trial court inquired whether defendant was "under the influence of any alcohol, drugs, narcotics, medicines, pills or any other substances" and received a negative answer. In addition,

the trial court had the following discussion with defendant concerning the plea

negotiation process:

> THE COURT: Have you agreed to plead guilty as part of a plea arrangement?
>
> [DEFENDANT:] Yes, sir.
>
> THE COURT: You are pleading guilty – you pled guilty to attaining the status of habitual felon, but was there actually a plea arrangement?
>
> [DEFENDANT:] No.
>
> [DEFENSE COUNSEL:] There's not a plea arrangement, Your Honor.
>
> THE COURT: So let me ask you that again. Have you agreed to plead guilty as part of a plea arrangement?
>
> [DEFENDANT:] No, sir.

At the conclusion of its inquiry into the voluntariness of defendant's decision to enter

a plea of guilty to having attained habitual felon status, the trial court accepted

defendant's plea.

¶ 14      At the ensuing sentencing hearing, defendant's trial counsel requested and

received permission for defendant to address the court.  At that point, defendant

stated that:

> Your Honor, I've made a lot of mistakes, and just like [defendant's trial counsel] said, I've not been into nothing since we went through this, and I show up to court all the time.  Not even probation officers have to worry about me, because I'm always there.  I show up, I pay my fines.  Never

> failed a drug test. . . . If you would take it into consideration, give me another chance, . . . you won't be sorry for your decision if you do. Let me have a probationary sentence. I'll do what I have to to get it done. You'll never see my face back here again. I want to apologize to everybody here.

After finding as mitigating circumstances that defendant suffered from "a mental condition that was insufficient to constitute a defense but significantly reduced the defendant's culpability for the offense" and that defendant "had a support system in the community," the trial court entered a judgment based upon defendant's convictions for selling buprenorphine after having attained the status of a habitual felon sentencing defendant to a term of 58 to 80 months imprisonment and entered a second judgment based upon defendant's conviction for possession of buprenorphine with the intent to sell or deliver sentencing defendant to a concurrent term of 8 to 19 months imprisonment.[2] Defendant noted an appeal to the Court of Appeals from the trial court's judgments.[3]

---

[2] Although the trial court orally arrested judgment in connection with defendant's conviction for delivering buprenorphine, a written order that the trial court entered at the conclusion of defendant's trial reflected that judgment had been arrested in connection with defendant's conviction for selling buprenorphine. The Court of Appeals unanimously determined that this discrepancy constituted a clerical error and remanded this case to the Superior Court, Mitchell County, for the correction of this and another, separate clerical error.

[3] In view of the fact that the notice of appeal that defendant, who was proceeding pro se at that point, filed with the Clerk of Superior Court, Mitchell County, was procedurally defective, defendant filed a petition seeking the issuance of a writ of certiorari authorizing review of the trial court's judgments on the merits with the Court of Appeals on 3 January 2019. The Court of Appeals allowed defendant's certiorari petition on 10 July 2019.

¶ 15        In seeking relief from the trial court's judgments before the Court of Appeals,

defendant argued that the trial court had erred by failing to hold another competency

hearing before the beginning of defendant's trial and by denying defendant's motion

to dismiss the charges that had been lodged against him for insufficiency of the

evidence.[4]  A majority of the Court of Appeals panel that had been assigned to hear

and decide this case agreed with the first of defendant's contentions, holding that the

trial court had erred by failing to determine whether defendant was competent to

proceed prior to the beginning of defendant's trial.  *State v. Allen*, 269 N.C. App 24,

26–27 (2019).

¶ 16        According to the Court of Appeals, a criminal defendant cannot be tried or

convicted "for a crime when by reason of mental illness or defect [the defendant] is

unable to understand the nature and object of the proceedings against him," *Id.* at 27

(quoting N.C. Gen. Stat. § 15A-1001(a) (2017)), with "defendant's competency [to be]

assessed at the time of trial" given that "a defendant's capacity to stand trial is not

necessarily static."  *Id.* (quoting *State v. Mobley*, 251 N.C. App. 665, 675 (2017)).  In

addition, the Court of Appeals noted that the trial court has a constitutional duty to

initiate a competency hearing on its own motion if the record contains "substantial

---

[4] Neither the majority nor the dissenting opinions at the Court of Appeals discussed the merits of defendant's challenge to the denial of his motion to dismiss for insufficiency of the evidence.

evidence" tending to show that the defendant might not be competent to stand trial. *Id.* (citing *Mobley*, 251 N.C. App. at 668).

¶ 17    In the Court of Appeals' view, "there was substantial evidence before the trial court that [d]efendant might have been incompetent to stand trial," *id.*, with this evidence having included defendant's three involuntary commitments during the period between his arrest and trial, the fact that defendant had been diagnosed as suffering from a number of mental health conditions,[5] his history of noncompliance with mental health treatment, his significant intellectual disabilities and cognitive defects, and the fact that two out of the three competency evaluations conducted prior to trial resulted in a finding of incompetence. *Id.* at 28–29. In addition, the Court of Appeals noted that defendant's trial counsel had expressed concern about defendant's competence to stand trial during the pre-trial hearing that was held before Judge Gavenus, at which point defendant's trial counsel stated that he did not necessarily agree with Dr. Berger's decision to find defendant to be competent to stand trial and that, at an earlier point in time, defendant had not understood the manner in which the judicial system functioned and had continuously asked his trial counsel to explain what was occurring. *Id.* at 30–31.

---

[5] The mental health diagnoses noted by the Court of Appeals included severe methamphetamine use disorder, severe opioid use disorder, adjustment disorder with depressed mood, antisocial personality disorder, attention deficit hyperactivity disorder, an unspecified mood disorder, an unspecified personality disorder, and polysubstance dependence. 269 N.C. at 28.

¶ 18        Furthermore, the Court of Appeals stated that the mistaken responses to certain questions that the trial court had posed to defendant during the process leading to the acceptance of defendant's plea of guilty to having attained habitual felon status cast further doubt upon defendant's ability to understand the proceedings in which he was involved. *Id.* at 33. More specifically, the Court of Appeals pointed out that, when asked if he was under the influence of alcohol, drugs, narcotics, medicines, pills, or other intoxicants, defendant had responded in the negative. According to the Court of Appeals, this answer should have raised concerns on the part of the trial court about the extent to which defendant was taking the medications that had been prescribed for him in connection with the "intensive outpatient" mental health treatment that defendant had been receiving. *Id.* In the same vein, the Court of Appeals emphasized that, when asked if he had agreed to a plea arrangement in connection with the entry of his plea of guilty to having attained habitual felon status, defendant had mistakenly responded in the affirmative before correcting his answer both prior to and after receiving clarification from his trial counsel. *Id.*

¶ 19        After reviewing the information contained in the record, the Court of Appeals reiterated that "the trial court must evaluate the defendant's competency to proceed *at the time of trial*" in light of possible fluctuations in a defendant's competence to stand trial, *id.* at 34 (citing *State v. Cooper*, 286 N.C. 549, 565 (1975)). In view of the

fact that defendant's most recent psychiatric evaluation, which had been conducted in June 2017, "was not current, and may not have accurately reflected Defendant's mental state at trial in February 2018" given that defendant's competence could have deteriorated over the course of the ensuing eight-month period, *id.*, and the fact that the pre-trial competency hearing that had been conducted before Judge Gavenus occurred six months before defendant's trial, the Court of Appeals held that "the trial court erred in failing to determine whether, *at the time of trial*, [d]efendant was competent to proceed." *Id.* at 35. As a result, the Court of Appeals remanded this case to the Superior Court, Mitchell County, for the purpose of determining whether defendant had been competent at the time of trial, with defendant to be granted a new trial in the event that the trial court could not determine on remand that defendant had been competent while the trial was in progress. *Id.* at 35–36.

In a dissenting opinion, Judge Dillon expressed the opinion that the trial court had not erred by failing to hold a second competency hearing prior to the beginning of defendant's trial. *Id.* at 36. After noting that the trial court was only required to initiate a competency hearing on its own motion in the event that the record contained "substantial evidence" tending to show that the defendant might be incompetent, *id.* (citing *State v. Badgett*, 361 N.C. 234, 259 (2006)), Judge Dillon pointed out that a trial court was not required to initiate a hearing for the purpose of evaluating a defendant's competence to stand trial after an earlier hearing stemming

from an expression of concern about the defendant's competence raised by the defendant's trial counsel two months prior to trial had resulted in a determination that the defendant was competent to stand trial. *Id.* at (citing *State v. Young,* 291 N.C. 562, 568 (1977) (stating that, "where, as here, the defendant has been committed and examined relevant to his capacity to proceed, and all evidence before the court indicates that he has that capacity, he is not denied due process by the failure of the trial judge to hold a hearing subsequent to the commitment proceedings").

According to Judge Dillon, the record contained no indication at the time that defendant's trial began that defendant lacked the capacity to proceed, that neither defendant's trial counsel nor anyone else had expressed any concern about defendant's capacity to proceed during defendant's trial, and that nothing had occurred during defendant's trial that sufficed to raise questions about defendant's capacity to proceed. *Allen*, 269 N.C. App at 37–38. In Judge Dillon's view, defendant's denial that he was "under the influence of any alcohol, drugs, narcotics, medicines, pills or any other substances" at the time that he entered his plea of guilty to having attained habitual felon status should be understood as an indication that defendant was not currently using any illegal substances or impaired in any way that would have prevented him from understanding the nature and consequences of his decision to plead guilty, rather than as an indication that he was not taking his medication as directed. *Id.* at 38. In addition, Judge Dillon concluded that

defendant's initial response to the trial court's inquiry concerning the extent, if any, to which he was entering a guilty plea pursuant to a plea arrangement with the State reflected a response to the first portion of the trial court's question, during which the trial court asked if defendant was pleading guilty, *id*., and that defendant had immediately corrected his answer upon further inquiry. *Id*. at 38–39. The State noted an appeal to this Court from the Court of Appeals' decision based upon Judge Dillon's dissent.

¶ 22    In seeking to persuade us to overturn the Court of Appeals decision, the State argues that the record does not contain a substantial basis for questioning defendant's competence to stand trial in the aftermath of Judge Gavenus' finding that defendant was competent. After noting that the relevant inquiry "depends on the totality of the circumstances" and that a court "must review the entire record," citing *State v. Heptinstall*, 309 N.C. 231, 236–37 (1983), the State directs our attention to *Young*, 291 N.C. at 568, in which this Court held that, when a "defendant has been committed and examined relevant to his capacity to proceed, and all evidence before the court indicates that he has that capacity, he is not denied due process by the failure of the trial judge to hold a hearing subsequent to the commitment proceedings." According to the State, defendant's most recent psychiatric evaluation found that he was competent, neither defendant nor his trial counsel disputed the contents of the evaluator's finding of competency at the pre-trial competency hearing

held before Judge Gavenus, and nothing in the record tended to show that defendant had become incompetent between the date of the pre-trial competency hearing and the date of defendant's trial.

¶ 23     In addition, the State argues that the Court of Appeals' holding rested upon nothing more than speculation that defendant's mental capabilities might have deteriorated between the pre-trial competency hearing and the trial in spite of the fact that the record contained no indication that anything of the sort had occurred and that such speculation does not suffice to raise a bona fide doubt concerning defendant's competence. On the contrary, the State contends that the record contains substantial justification for the opposite conclusion given that defendant's condition had improved after two earlier evaluations found him to be incapable of proceeding, that defendant had received intensive psychiatric treatment that had resulted in improvements to his mental condition, and that defendant's decision to take responsibility for the crimes that he had committed at the sentencing hearing demonstrated that he comprehended the nature of the proceedings in which he was involved.

¶ 24     The State contends that the Court of Appeals misinterpreted the information contained in the record in concluding that defendant might have become incompetent by the time of trial. In the State's view, the Court of Appeals erred by relying upon defendant's intellectual disability and low IQ scores in determining that he might

have become incompetent given that a competency determination requires evaluation of the extent to which a defendant is able to understand the proceedings that have been initiated against him and to assist in his defense, citing *Godinez v. Moran*, 509 U.S. 389, 396 (1993).  Similarly, the State claims that the Court of Appeals erred by relying upon the statements that defendant's trial counsel made at the competency hearing held before Judge Gavenus given that defendant's trial counsel requested the trial court to "make a finding" concerning defendant's competency and did not dispute Judge Gavenus' determination that defendant was capable of proceeding.  Finally, the State argues that the Court of Appeals erred by relying upon certain statements that defendant made during the habitual felon status plea acceptance and sentencing phases of the proceeding as tending to show defendant's incompetence given that defendant's denial that he was under the influence of any drugs or medication could readily be understood as an assertion that he had not consumed any illegal drugs or other substances that might impair his judgment rather than as an admission that he had stopped complying with the course of mental health treatment that had been prescribed for him and given that defendant's mistaken statement that he had entered his plea of guilty to having attained habitual felon status as part of a plea arrangement represented nothing more than an acknowledgement that he was pleading guilty and given that his error in making this statement had been quickly corrected.

¶ 25    In seeking to persuade us to uphold the Court of Appeals decision, defendant asserts that a trial court has a constitutional duty to initiate a competency hearing on its own motion in the event that the evidence "raises a 'bona fide doubt' as to a defendant's competence to stand trial," citing *Pate v. Robinson*, 383 U.S. 375, 385 (1966). According to defendant, the trial court had a duty to evaluate his competency to proceed at the time of trial and that, "[d]ue to the nature of [his] limitations, the trial court could not assume the stability of [his] competence when a substantial period of time elapsed between the finding of competence and the commencement of trial." In defendant's view, defendant's (1) well-documented disabilities; (2) short- and long-term memory deficits and impaired ability to recall information; (3) profound deficits in his fund of knowledge; and (4) various mental illnesses and conditions all raised questions about the extent to which defendant was competent to stand trial. As a result of the fact that his competency was "transient in nature, tenuous, and extremely fragile," and that a period of eight months had elapsed between his most recent psychiatric evaluation and the time of trial, defendant argues that the trial court had erroneously relied upon a "stale competency determination" that failed to reflect his present ability to stand trial.

¶ 26    In addition, defendant argues that his responses during the plea colloquy and sentencing phase demonstrate that he failed to understand the nature and consequences of the proceedings against him. In defendant's view, our decision in

*Young* stands for the proposition that "a trial court has a constitutional duty to institute, *sua sponte*, a competency hearing if there is substantial evidence before the court indicating that the accused may be mentally incompetent" and does not create a presumption of ongoing competency in the event that the defendant was found to be competent at the time of his or her most recent psychiatric evaluation.

¶ 27        "A criminal defendant may not be tried unless he is competent," *Godinez*, 509 U.S. at 396 (citing *Pate*, 383 U.S. 375, 378 (1966)), with a defendant having been deprived of his right to avoid being deprived of liberty without due process of law in the event that his conviction resulted from a trial during which he was incompetent. *Pate*, 383 U.S. at 378. A defendant is deemed to be incapable of standing trial when he "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope*, 420 U.S. at 171; see also N.C.G.S. § 15A-1001(a) (providing that "[n]o person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner"). A defendant's competence to stand trial may be raised at any time during trial, with "the court [being required to] hold a hearing to determine the defendant's capacity to proceed" in the event that a challenge to the defendant's competence is asserted. N.C.G.S. § 15A-1002(b)(1)

(2019). In addition, a trial court in this jurisdiction has a "constitutional duty to institute, *sua sponte*, a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent." *Heptinstall*, 309 N.C. at 236 (1983) (quoting *Young*, 291 N.C. at 568).

¶ 28      The "substantial evidence" sufficient to require a trial court to initiate a competency hearing on its own motion exists in situations in which the record raises a "bona fide doubt" concerning the defendant's competence. *Pate*, 383 U.S. at 385. In determining whether the evidence is sufficient to raise a bona fide doubt concerning the defendant's competence, a trial court is entitled to consider, among other things, the

> defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial . . . but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.

*Drope*, 420 U.S. at 180. "The relevant period of time for judging a defendant's competence to stand trial is 'at the time of trial.'" *State v. Hollars*, 376 N.C. 432, 442 (2020) (quoting *Cooper*, 286 N.C. at 565). Moreover, "even when the defendant is deemed competent to stand trial at the commencement of the proceedings, circumstances may arise during trial 'suggesting a change that would render the

accused unable to meet the standards of competence to stand trial.' " *Hollars*, 376 N.C. at 442 (quoting *Drope*, 420 U.S. at 181).

¶ 29        The mere existence of evidence tending to show that the defendant has exhibited certain signs of mental disorder in the past or has engaged in what might be deemed unusual behavior during trial does not necessarily require the trial court to inquire into the defendant's competence to proceed on his own motion. For example, we have previously stated that, where "the defendant has been committed and examined relevant to his capacity to proceed, and all evidence before the court indicates that he has that capacity, he is not denied due process by the failure of the trial judge to hold a hearing." *Young*, 291 N.C. at 568. Similarly, in a case in which the trial judge made inquiry of the defendant's trial counsel prior to the commencement of the defendant's trial for first-degree murder if the defendant's competence had been evaluated and in which the defendant's trial counsel responded by stating that the defendant had previously received mental health services for the purpose of treating his depression following a suicide attempt, we determined that

> there is some evidence in the record indicating that defendant had received precautionary treatment for depression and suicidal tendencies several months before trial. However, this evidence of past treatment, standing alone, does not constitute "substantial evidence" before the trial court, indicating that defendant "lack[ed] the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense" at the time his trial commenced.

*State v. King*, 353 N.C. 456, 467 (2001) (citation omitted) (first quoting *Young*, 291 N.C. at 568; and then quoting *Drope*, 420 U.S. at 171). Finally, in *Badgett*, 361 N.C. at 259–60, this Court determined that the fact that the defendant had told the jury that he wished to be sentenced to death and verbally attacked the prosecutor during an emotional outburst "did not constitute 'substantial evidence' requiring the trial court to institute a competency hearing." As a result, the fact that a defendant has received mental health treatment in the past or acts in an unusual or emotional manner during trial does not, without more, suffice to require the trial court to undertake an inquiry into the defendant's competence on the trial court's own motion.

¶ 30     A careful review of the record before the trial court at the time of defendant's trial indicates that he had been involuntarily committed on four occasions during the two-year period between the date upon which defendant was arrested and the date upon which this case was called for trial. During this period, three different evaluations were conducted for the purpose of determining whether defendant was competent to stand trial. In the first of these evaluations, which was conducted during November 2016, Mr. Freedman found that defendant was not competent to stand trial given the existence of profound deficits in his fund of knowledge, his low IQ scores, his intellectual disabilities, and his near-complete failure to understand the judicial process. In addition, defendant's treatment team diagnosed him as suffering from severe methamphetamine use disorder, severe opioid use disorder,

adjustment disorder with depressed mood, antisocial personality disorder, and suicidal ideation and Mr. Freedman noted that defendant had previously been diagnosed as suffering from attention deficit/hyperactivity disorder, mood disorder, polysubstance dependence, and personality disorder.

¶ 31    At the time of defendant's second evaluation, which was conducted in February 2017, Dr. Berger opined that, while defendant was not capable of proceeding to trial at that time, the extent to which he might be competent to stand trial in the future would depend upon the extent to which defendant could develop an understanding of the judicial process and the nature and extent of the charges that had been lodged against him. According to Dr. Berger, any improvement in the likelihood that defendant would be found competent to stand trial depended upon the extent to which defendant successfully participated in the competency restoration classes that were available at Broughton Hospital. In the course of his commitment to Broughton Hospital, defendant received various treatments that were designed to improve his mental health and comprehension, including the administration of medication for the purpose of addressing anxiety and improving his sleep, participation in educational groups focused upon improving his understanding of courtroom procedures, and attendance at Alcoholics Anonymous meetings.

¶ 32    After defendant had received treatment at Broughton Hospital for about a month, Dr. Berger conducted another evaluation of defendant's competence to stand

trial. At that time, defendant was only diagnosed as suffering from intellectual disability and opiate use disorder in sustained remission. Dr. Berger reported that, according to the treatment team, defendant had cooperated with the educational and treatment process, had not presented any behavioral management challenges, had been able to advocate for his own needs, had interacted with his peers and hospital staff in an appropriate manner, and had been able to independently complete tasks associated with daily living. In addition, Dr. Berger noted that defendant was able to identify his attorney; name the specific charges that had been lodged against him; state that, in the event that he was found guilty of committing a felony, he would receive a prison sentence; and was able to provide a basic explanation of the plea negotiation process. According to Dr. Berger, defendant was able to provide "reality-based and accurate" explanations of the roles played by defense attorneys, prosecutors, judges, members of the jury, and witnesses during the trial process and had informed Dr. Berger that he was ready to proceed to trial and believed that he would be treated fairly in the judicial system. As a result, Dr. Berger concluded that defendant's competency had been restored and that he was capable of proceeding to trial.

¶ 33        At the pre-trial competency hearing that was held before Judge Gavenus, defendant's trial counsel did express reservations about whether defendant's competency had been "restored" during his time at Broughton Hospital, stating "I

don't agree that he's necessarily capable" and indicating that "there is some question in my mind" about defendant's competency "because I've dealt with [defendant] for a number of years." On the other hand, defendant's trial counsel admitted he was not "a doctor to judge [defendant's] condition" and asked Judge Gavenus to carefully examine Dr. Berger's report, thoroughly consider the evidence, and make a determination concerning defendant's competence to stand trial. After reading Dr. Berger's second forensic evaluation and asking defendant several questions, Judge Gavenus determined that defendant was competent to proceed.

At the time that this case was called for trial, neither party made any attempt to revisit the issue of defendant's competence. In addition, neither party raised the issue of defendant's competence at any point during the course of the trial. Finally, no witness testified in such a manner as to question defendant's competence and nothing else occurred during the trial that tended to suggest that defendant had become incompetent since Judge Gavenus had found that defendant was capable of standing trial. As a result, since defendant had previously been "committed and examined relevant to his capacity to proceed" and since "all evidence before the court indicate[d] that he ha[d] that capacity," *Young*, 291 N.C. at 568, we conclude that the trial court did not err by failing to initiate an inquiry into the issue of defendant's competence on its own motion.

¶ 35       In support of his argument, defendant points to certain statements that he and his trial counsel made during the post-verdict proceedings that resulted in the acceptance of defendant's guilty plea to having attained habitual felon status and the imposition of the trial court's judgments.  A careful review of the statements upon which defendant relies, in the context in which they were made, satisfies us that defendant's arguments lack persuasive force.  For example, we are unable to understand defendant's negative response to the trial court's inquiry concerning whether defendant was "now under the influence of any alcohol, drugs, narcotics, medicines, pills or any other substances" as a suggestion that he had ceased taking the mental health medications that had been prescribed for him, particularly given defendant's subsequent claim that he had "not been into nothing" illegal in the recent past and had "[n]ever failed a drug test" that had been administered by his probation officers and given defendant's claim that he had been receiving "intensive outpatient" services from an organization associated with Broughton Hospital.  Instead, defendant's negative answer to the trial court's question seems to us to be little more than a denial that his mental faculties were adversely affected at the time of the entry of his guilty plea as a result of the consumption of an impairing substance.  Similarly, we are unable to understand defendant's initial error in stating that he was entering a plea of guilty to having attained habitual felon status pursuant to a plea agreement with the prosecutor as casting doubt upon defendant's competence given that the

question actually posed by the trial court inquired as to whether defendant had "agreed to plead guilty as part of a plea arrangement" and given that defendant immediately withdrew his misstatement both before and after an intervention by his trial counsel. In other words, defendant's error looks like nothing more than a simple mistake. Moreover, even though defendant's trial counsel stated at the sentencing hearing that defendant was "on disability," that he was "a very low-functioning individual" with an IQ around 82, and that "he was found to be incompetent and then found to be competent at a later date,"[6] this argument was, on its face, nothing more than a successful attempt to persuade the trial court to find the existence of the statutory mitigating factor set out in N.C.G.S. § 15A-1340.16(e)(3) (establishing a statutory mitigating factor available in situations in which "[t]he defendant was suffering from a mental or physical condition that was insufficient to constitute a defense but significantly reduced the defendant's culpability for the offense"). Finally, defendant's request for the entry of a judgment placing him on probation strikes us as, in essence, a cry for mercy rather than an indication that defendant failed to understand the nature of the proceedings in which he was participating. As a result, we conclude that none of these statements, taken either individually or in

---

[6] As has been noted elsewhere in this opinion, Mr. Freedman reported that defendant's reported IQ was approximately 60.

conjunction with each other, suffice to raise a substantial question about defendant's competence to stand trial.

¶ 36        Ultimately, defendant's challenge to the trial court's failure to inquire into defendant's competence to stand trial on its own motion rests upon the fact that defendant had significant cognitive deficiencies and the fact that a person's competence is subject to change. Although a defendant's competence must be evaluated "at the time of trial" and although events that occur during trial may place the trial court on notice that a defendant's competence has become subject to question, *Hollars*, 376 N.C. at 442, a trial court is also entitled to rely upon the correctness of a pre-trial competency determination in the absence of a specific basis for believing that the defendant's competence is subject to legitimate question. In view of our determination that nothing tending to raise a substantial doubt about defendant's continued competence occurred after the entry of Judge Gavenus' order finding defendant to be competent to stand trial and before the end of the trial, we hold that the trial court did not err by failing to conduct an inquiry into defendant's competence upon its own motion and that the Court of Appeals erred by reaching a contrary conclusion. As a result, the Court of Appeals' decision is reversed and this case is remanded to the Court of Appeals for further proceedings not inconsistent with this opinion, including consideration of defendant's challenge to the trial court's

decision to deny his motion to dismiss the charges that had been lodged against him

for insufficiency of the evidence.

REVERSED AND REMANDED.