An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-102

Filed 4 February 2026

Wake County, Nos. 22CR205465-910, 23CR015237-910

STATE OF NORTH CAROLINA

v.

JESSIAH JAMES HUBBARD

Appeal by Defendant from judgment entered 21 February 2024 by Judge A. Graham Shirley II in Wake County Superior Court. Heard in the Court of Appeals 14 October 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Clarence Turpin, V, for the State.*
>
> *Caryn Strickland, for the Defendant.*

WOOD, Judge.

Jessiah James Hubbard ("Defendant") appeals from jury verdicts finding him guilty of failing to report his change of address for the sex offender registry in violation of N.C. Gen. Stat. § 14-208.11(a)(2) and of having attained habitual felon status. Defendant raises two issues on appeal. First, Defendant argues the trial

court failed to conduct a competency hearing in response to "red flags" relevant to his competency. Second, Defendant argues his waiver of his Sixth Amendment right to counsel was invalid because the trial court erred by failing to comply with N.C. Gen. Stat. § 15A-1242.

## I. Factual and Procedural Background

On 3 April 2022, Defendant was arrested by Cary Police Department Officer Matthew Watson for failing to report his change of address for the sex offender registry in violation of N.C. Gen. Stat. § 14-208.11(a)(2). At his arrest, Defendant had been living in a homeless encampment in the woods adjacent to the Embassy Suites in Cary, while the sex offender registry listed his current address in Raleigh. Those on the sex offender registry must report a change of address, including when residing in temporary housing or out-of-doors like "in a tent" or "under a bridge," within three business days to the last registering sheriff and within ten days to the sheriff of the new county to which they have moved, if applicable. N.C. Gen. Stat. §§ 14-208.11(a)(2), 14-208.9(a).

On 19 April 2022, Defendant was indicted for failing to report his change of address for the sex offender registry in violation of N.C. Gen. Stat. § 14-208.11(a)(2). Defendant's initial hearing was held on 26 October 2022. From the outset, Defendant's court appointed attorney, Assistant Public Defender Patrick Koch ("Attorney Koch"), informed the trial court of Defendant's intention to represent himself. Specifically, Attorney Koch stated:

MR. KOCH: Your Honor, I believe it is my client's wish to represent himself so I think he also wants to be heard on some matters. I've advised him of his right to remain silent and that the court reporter is recording everything he's to say, but he's informed me some time ago that he wants to represent himself. And we've been brought over a couple times, and we weren't reached, but I think that's still his wish.

THE COURT: All right. [Defendant], I understand you want to address the Court. Let me remind you of a couple things before you do that. First of all, you do have a right to remain silent. Anything you say can and will be used against you.

Secondly, Mr. Koch at this moment is your attorney. If you have any questions about what you should say to me or if I ask you any questions and you want to confer with your counsel before you answer, you are welcome to do that. But if you wish to speak to me, I'll be happy to hear from you, sir.

THE DEFENDANT: Okay. Is there any questions you want to ask me about the self-representation?

. . .

THE COURT: Well, I want to know what the concern about your attorney is first. You're asking for your attorney to withdraw, or do you just - -

THE DEFENDANT: Standby counsel.

THE COURT: So you've just decided you want to represent yourself?

THE DEFENDANT: I decided this a while back, yes.

THE COURT: Do you understand you have a right to counsel?

THE DEFENDANT: Yeah.

THE COURT: You understand that, if you can't afford counsel, one will be appointed for you?

THE DEFENDANT: Okay.

The trial court explained the role of standby counsel to Defendant and explained what would be expected of him if he represented himself. Attorney Koch informed the trial court that Defendant faced a class F felony and that he faced a maximum possible punishment of up to 59 months incarceration. Defendant acknowledged he understood.

The trial court further inquired into Defendant's level of reading and writing comprehension, and Defendant informed the trial court he has a GED. After further inquiries into Defendant's desire to represent himself, the trial court ultimately concluded Defendant had knowingly waived his right to counsel after explicitly asking him twice if it was his wish to represent himself in the matter and to waive his right to counsel. Defendant answered in the affirmative.

The trial court then proceeded to ask if there were any issues before the Court other than the "attorney issue." Defendant replied, "[w]ell, can we at least - - out of respect to the families, will the State give a minute of silence for the deceased children?" The trial court responded, "[a]ll right. What's before the Court at this time is the motion to allow you to represent yourself, which I have now granted. I need you to sign that form. That's what we are doing today." Defendant then requested

standby counsel, was administered the oath affirming his waiver of counsel, and signed the written waiver of counsel form. As the hearing concluded, Defendant commented, "[w]hy can't we do a moment of silence for them? Why can't we do a minute of silence for them, huh? Why can't we do a minute of silence for the children in this matter? Why can't we do that?"

On 4 January 2023, Defendant appeared *pro se* with standby counsel, Attorney Nicholas Saparilas ("Attorney Saparilas"), at his arraignment hearing on the charge of failing to report his change of address for the sex offender registry in violation of N.C. Gen. Stat. § 14-208.11(a)(2). Defendant attempted to "not plead[] to anything," and insisted, "I am entering no plea." The trial court entered a plea of not guilty on his behalf. Defendant became argumentative, insisted the trial court read aloud a letter he had written and stated, "[y]ou all are endangering the women and children - - ," and asked, "[w]hy did you extradite me from Michigan - - ?" The trial court asked Defendant if he was able to understand instructions and what he was being asked to do; Defendant answered, "I don't understand what you're saying." The trial court then considered whether Defendant needed to be evaluated. That same day the trial court entered a motion and order *sua sponte* committing Defendant to Central Regional Hospital for examination to determine his capacity to proceed.

On 31 January 2023, Susan Hurt, Ph.D. ("Dr. Hurt") from Central Regional Hospital evaluated Defendant and prepared a forensic evaluation summary for the trial court. The summary indicated that when asked why Defendant thought the

capacity evaluation was ordered, he responded that he had "kind of pissed the judge off." Dr. Hurt's evaluation summary stated, in relevant part:

> [Defendant] may be factually mistaken in the relevance or importance of his assertions, but in this evaluation, he exhibited no signs that delusions or other cognitive distortions are driving his priorities in managing his legal circumstances . . . . Even in light of those difficulties, this evaluation could find no evidence of current symptoms of mental disorder and could not find any signs at all of intellectual disorder.
>
> At the current time, [Defendant] presents with adequate capacity to manage his own impulses . . . he is able to choose actions according to his own reasoned motivations.
>
> . . . .
>
> *Ability to Assist in his Defense* This evaluation acknowledges the concern for [Defendant] choosing to represent himself or any choice he might make to talk over others in court out of anger. This evaluation does not, however, find the presence of current mental health symptoms which undermine [Defendant's] ability to assist in his own defense.

On 15 March 2023, the trial court heard Attorney Saparilas' motion to withdraw as standby counsel. The trial court acknowledged Defendant was proceeding *pro se* at this hearing with standby counsel, Attorney Saparilas, present. In support of his motion, Attorney Saparilas stated, "[i]t's no reflection on his potential case or anything like that, but we just don't see eye to eye, and I think even in a standby posture, I think he's going to need somebody that he can get along with better than with me." The trial court again discussed the role of standby counsel with

Defendant and he reiterated his desire to represent himself. The trial court granted Attorney Saparilas' motion to withdraw and agreed to assign new standby counsel. Thereafter, the State informed the trial court it would pursue an indictment against Defendant as a habitual felon since Defendant appeared to have rejected its plea offer and further informed the trial court that the habitual felon status would elevate Defendant to "the record level six, Class C category." Defendant was indicted on the charge of attaining habitual felon status on 9 May 2023.

On 26 July 2023, Defendant appeared in court *pro se* with new standby counsel, Attorney Douglas Brown ("Attorney Brown"), for arraignment on the charge of having attained habitual felon status. Defendant pleaded not guilty. Desiring to make all communications with his standby counsel public, Defendant requested to file copies of letters he had written to his standby counsel. The trial court explained to Defendant that communications between him and his standby counsel are confidential and privileged. Defendant agreed at the trial court's request that he would consult with standby counsel before filing any of their communications to the public record.

On 6 October 2023, Defendant appeared *pro se* with standby counsel, Attorney Brown, at a pretrial motions hearing. The trial court began the hearing by noting no hearing had taken place in regard to Defendant's mental health evaluation done in January 2023 nor had a determination regarding Defendant's capacity to proceed been made. The trial court examined the forensic evaluation report from Central

Regional Hospital and found that, "Defendant is able to understand the nature and object of the proceedings against him, he is able to comprehend his own situation in reference to these proceedings, and he is able to assert his defense in a rational and reasonable manner; therefore, this matter shall proceed." Defendant did not object to the trial court's determination or request a hearing on the matter.

The trial court proceeded to hear Defendant's numerous motions, including motions for a moment of silence during trial, a fair and speedy trial, and "to withdraw waiver of amendment of right to counsel," about which the trial court made further inquiries. The trial court once again explained to Defendant that in order for him to represent himself, he must waive his right to counsel. Defendant again reiterated that he wished to represent himself at trial with the assistance of standby counsel. Ultimately the trial court denied the motion "to withdraw waiver of amendment of right to counsel" after stating, "this motion does not accomplish what you are seeking it to accomplish." Defendant next appeared *pro se* at document exchange hearings on 22 and 23 January 2024.

On 20 February 2024, Defendant's trial came on for hearing in Wake County Superior Court. Defendant appeared *pro se* along with standby counsel, Attorney Brown and Attorney Taylor Manning ("Attorney Manning"). Defendant requested that standby counsel represent him during jury selection but continued to express his desire to represent himself before the jury. Additional facts regarding the trial are included in the analysis below.

On 21 February 2024, the jury found Defendant guilty of failing to report his change of address for the sex offender registry in violation of N.C. Gen. Stat. § 14-208.11(a)(2), and guilty of having attained habitual felon status. The trial court found Defendant to be a prior felony record level six and sentenced him to 87 to 117 months of imprisonment. Defendant gave oral notice of appeal in open court.

## II.   Analysis

On appeal, Defendant argues his waiver of his Sixth Amendment right to counsel was invalid. First, Defendant argues the trial court failed to adequately conduct the inquiry required by N.C. Gen. Stat. § 15A-1242 on the charge of attaining habitual felon status and misinformed him of his possible sentencing exposure on both charges. Second, Defendant argues the trial court erred by allowing Defendant to represent himself without first conducting a competency hearing to determine whether he was competent to proceed. After careful review of the record and applicable law, we hold Defendant received a fair trial free from error.

## A. Standard of Review

Issues addressing waiver of counsel pursuant to N.C. Gen. Stat. § 15A-1242 are reviewed *de novo*. *See State v. Lindsey*, 271 N.C. App. 118, 124, 843 S.E.2d 322, 327 (2020). "The standard of review for alleged violations of constitutional rights is *de novo*." *State v. Hollars*, 266 N.C. App. 534, 540, 833 S.E.2d 5, 9 (2019). "We review questions of law de novo, considering the matter anew and freely substituting our own judgment for those of the lower courts." *State v. Wilkins*, 386 N.C. 923, 928, 909

S.E.2d 215, 219 (2024).

## B. Competency

First, we address Defendant's argument that the trial court failed to hold a meaningful competency hearing to determine whether he was competent to proceed prior to allowing him to waive his Sixth Amendment right to counsel. Defendant argues that notwithstanding its concerns during the 4 January 2023 arraignment hearing which prompted the trial court to commit him and order the capacity evaluation, the trial court allowed him to represent himself during subsequent pretrial hearings and at trial without first conducting a proper competency hearing and determination of his competency to stand trial. Additionally, Defendant argues the trial court failed to appoint counsel for him on the issue of competency.

> [A] question regarding a defendant's capacity to proceed "may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court" and that, once a defendant's capacity to stand trial is called into question, the trial court is required to "hold a hearing to determine the defendant's capacity to proceed." When a competency hearing is conducted, "reasonable notice shall be given to the defendant and prosecutor, and the State and the defendant may introduce evidence."

*State v. Flow*, 384 N.C. 528, 546, 886 S.E.2d 71, 85 (2023) (quoting N.C. Gen. Stat. § 15A-1002). Our Courts have held that a defendant may generally waive a statutory right, including the right to a competency hearing, by failing to assert the right to the trial court at the appropriate time. *Wilkins*, 386 N.C. at 929, 909 S.E.2d at 219. Our Supreme Court has further held when "the defendant has been committed and

examined relevant to his capacity to proceed, and all evidence before the court indicates that he has that capacity, he is not denied due process by the failure of the trial judge to hold a hearing subsequent to the commitment proceedings." *State v. Young*, 291 N.C. 562, 568, 231 S.E.2d 577, 581 (1977). Statutory rights to a competency hearing are not equivalent to the constitutional right; the constitutional right to a competency hearing cannot be waived. *Wilkins*, 386 N.C. at 930, 909 S.E.2d at 220.

However, for the constitutional right to apply, "there must be substantial evidence of the defendant's incompetency." *Id.* "Substantial evidence which establishes a bona fide doubt as to a defendant's competency may be established by considering 'a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial.'" *State v. Hollars*, 376 N.C. 432, 442, 852 S.E.2d 135, 142 (2020) (quoting *Drope v. Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 908 (1975)). While any one of the *Drope* factors listed above may have "the potential to give rise to a bona fide doubt as to the defendant's competency in some circumstances," "the relevant period of time for judging a defendant's competence to stand trial is 'at the time of trial.'" *Hollars*, 376 N.C. at 442, 852 S.E.2d at 142 (quoting *State v. Cooper*, 286 N.C. 549, 565, 213 S.E.2d 305, 316 (1975)).

Here, Defendant has waived his statutory right to a competency hearing because there is no evidence in the record, he asserted his right to a competency hearing or objected at any time to the question of his capacity. *See Wilkins*, 386 N.C.

at 927, 909 S.E.2d at 219.  Defendant argues for the first time on appeal that the trial court failed to hold the competency hearing prescribed by N.C. Gen. Stat. § 15A-1002 following his capacity evaluation.  Defendant had ample opportunity during pretrial hearings to object or to assert his right to a competency hearing.  Further, Defendant was never declared incompetent to stand trial.  Notwithstanding the "bizarre, erratic, and irrational behaviors" Defendant now points to regarding his capacity, the capacity evaluation by Dr. Hurt specifically addressed some of these behaviors as discussed *supra* and concluded in relevant part:

> [Defendant] may be factually mistaken in the relevance or importance of his assertions, but in this evaluation, he exhibited no signs that delusions or other cognitive distortions are driving his priorities in managing his legal circumstances . . . .  Even in light of those difficulties, this evaluation could find no evidence of current symptoms of mental disorder and could not find any signs at all of intellectual disorder.

> At the current time, [Defendant] presents with adequate capacity to manage his own impulses, to attend to input from others in his environment, to process information, and to make decisions in a goal directed manner.  While he may not be fully willing to cooperate with processes which undermine his own goals, he is able to choose actions according to his own reasoned motivations.  Under these circumstances, failures to comply with court directives are a matter of ordinary structure and consequences in the courtroom; they do not give rise to a need for treatment of an underlying mental disorder.

Following this evaluation, the trial court examined the report and found Defendant capable of proceeding, to which Defendant did not object or request a competency

hearing. While Defendant could not have waived his *constitutional* right to a competency hearing, the record lacks substantial evidence that would support Defendant being found incompetent at the time of trial. *Hollars*, 376 N.C. at 442, 852 S.E.2d at 142; *see Wilkins*, 386 N.C. at 930-31, 909 S.E.2d at 220-21. Further, Defendant points only to specific instances of behavior "establishing real doubt" of his competency *prior to trial* while the relevant period of time to consider his competency is at the time of trial. *Hollars*, 376 N.C. at 442, 852 S.E.2d at 142. Therefore, the trial court did not err by failing to hold a competency hearing on statutory or constitutional grounds.

## C. Compliance with N.C. Gen. Stat. § 15A-1242

Next, we consider Defendant's argument that the trial court failed to comply with the requirements of N.C. Gen. Stat. § 15A-1242. Defendant argues the trial court's inquiry during the initial 26 October 2022 hearing was not adequate to support his waiver of his right to counsel for the charge of being a habitual felon because he had not yet been indicted on the charge. Further, Defendant argues the trial court repeatedly misinformed him of his sentencing exposure on both the charge of failing to report his change of address for the sex offender registry and attaining habitual felon status.

"The Sixth Amendment of the Constitution of the United States as applied to the states through the Fourteenth Amendment guarantees an accused in a criminal case the right to assistance of counsel for his defense." *Lindsey*, 271 N.C. App. at 126,

843 S.E.2d at 328 (quoting *State v. White*, 78 N.C. App. 741, 744, 338 S.E.2d 614, 616 (1986)). A criminal defendant has the right to handle his own case; however, the trial court must first "establish both the defendant clearly and unequivocally expressed a desire to proceed without counsel, and that the defendant knowingly, intelligently, and voluntarily waived the right to counsel." *Lindsey*, 271 N.C. App. at 126, 843 S.E.2d at 328. This Court has held compliance with N.C. Gen. Stat. § 15A-1242 satisfies both constitutional and statutory standards. *Lindsey*, 271 N.C. App. at 126-27, 843 S.E.2d at 329.

N.C. Gen. Stat. § 15A-1242 states,

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:
>
> (1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;
>
> (2) Understands and appreciates the consequences of this decision; and
>
> (3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

N.C. Gen. Stat. § 15A-1242 (2023). It is prejudicial error to allow a "defendant to proceed *pro se* at any critical stage of criminal proceedings without making the inquiry required by N.C. Gen. Stat. § 15A-1242." *Lindsey*, 271 N.C. App. at 128, 843 S.E.2d at 330 (quoting *State v. Frederick*, 222 N.C. App. 576, 584, 730 S.E.2d 275, 281

(2012)).

Here, as discussed *supra*, the trial court repeatedly informed Defendant of his right to be represented by counsel and obtained a written waiver of counsel during the initial 26 October 2022 hearing. Additionally, for almost two years during subsequent pretrial hearings, Defendant clearly expressed his desire to represent himself and the trial court continued to remind him of his right to counsel. On appeal, Defendant does not argue the trial court's colloquy at the 26 October 2022 hearing was inadequate in regard to the charge of failing to report his change of address for the sex offender registry, rather Defendant argues this colloquy cannot also apply to the charge of being a habitual felon. Irrespective of whether the 26 October 2022 colloquy applies to both charges, we conclude the trial court's inquiries at trial comport with the requirements set forth in N.C. Gen. Stat. § 15A-1242.

On the first day of trial, Defendant informed the trial court of his desire to simultaneously enter a plea of no contest *and* make a policy argument in front of the jury. In response, the trial court informed Defendant of the differences between a plea of no contest, accepting a plea deal, and pleading not guilty, as well as the possible sentencing risk exposure he faced if the jury found him guilty:

> THE COURT: So if a jury finds you guilty - - it's my understanding that you are a prior record level five for habitual sentencing purposes. And if the jury finds you guilty of this offense and finds you guilty of being - - or finds that you've attained the status of habitual felon, in the presumptive range*, the minimum sentences run from 101 to 127 months.* If you plead - - if the jury finds you guilty,

> but they do not find that you're a habitual felon, the sentences will - - *minimum sentences go from 26 to 33 months.* Those are the minimums. And so what would happen if they find you guilty of the charge alleged, we'd have another proceeding after that to determine whether you have attained the status of habitual felon. And if you have, that increases the penalty by four classes. So it would go from an F to a C.

Next, the trial court heard a number of pretrial motions by Defendant, including a "withdrawal of your waiver of right to counsel . . . ." The trial court again asked Defendant, "[d]o you want to be represented by counsel?" The following colloquy took place:

> THE DEFENDANT: I'm going to answer that question. My intention is to waive my right of counsel during trial, not before. So that's mainly my intention here.
>
> THE COURT: So you want counsel right now?
>
> THE DEFENDANT: Yeah, until - - until trial, until we get in front of a jury, then yeah. Once we get in front of a jury, I'll present my case and waive counsel then.
>
> THE COURT: All right. You understand policy arguments - - the jury determines facts.
>
> THE DEFENDANT: Yes.

After ruling on Defendant's remaining pretrial motions, the trial court recapped by stating in part:

> The speedy trial motion was heard on October - - in October 2023, was denied by Judge Hill, as was a motion to withdraw a waiver of counsel. The defendant, subsequent to those hearings, filed a motion to withdraw waiver of counsel and a new motion for speedy trial.

. . . .

> The defendant has had one regular counsel, two standby
> counsel on the underlying charge, one standby counsel on
> the habitual felon and any prejudice that has been shown
> is insufficient to constitute a due process violation.

The trial court then revisited the issue of whether Defendant was waiving his right

to counsel at trial or not:

> THE COURT: . . . The motion with respect to assistance of
> counsel, you're seeking to have counsel with you through
> voir dire and you're going to make your - -
>
> THE DEFENDANT: I'll do my presentation at trial.
>
> THE COURT: All right. I will grant that. You all will be
> his - - I'm going to appoint you as counsel through voir dire
> and then, per his wish, you will return to standby status
> after voir dire.

The trial court then instructed Defendant's standby counsel to contact the

public defender's officer to have Defendant outfitted with clothes before trial officially

began that afternoon. After court reconvened, the trial court and Defendant

continued to discuss Defendant's various motions and arguments about his prior

convictions. Once the potential jurors entered the court room, the trial court

introduced the parties and stated, "the defendant in this case . . . *at this point he is*

*represented* by [Attorney] Manning and [Attorney] Brown." The trial court then

informed the potential jurors that Defendant had entered a plea of not guilty.

The State began voir dire, with Defendant making his own objection to the

potential juror the State excused for cause. Defendant's standby counsel stepped in

and asked to hear more about why the potential juror was being excused. The trial court, after discussion with Defendant on the potential juror, informed the jury that Defendant had asked standby counsel to assist him with voir dire but after the jury was selected and impaneled, Defendant would then take over the defense of the case.

The next day, the trial court began by informing Defendant of the following:

> THE COURT: All right. Before we bring the jury back in, [Defendant], two things I need to address with you on the record. I looked over your prior record level sheet and will go over it in more depth in the event this jury finds you guilty, but as I calculate the points, you have 20 points, which makes it a prior record level six, which would mean the maximum punishment that could be imposed if they - - if they do not - - if they find you guilty of the underlying felonies but not of the habitual felon would be a *minimum of 25 to a maximum of 39 months.* If they find that you have attained the status of habitual felon, the *maximum punishment that could be imposed would be a minimum of 146 months to a maximum of 188 months.*
>
> The reason I tell you this is I don't know when you were - - when you waived right to counsel what you were advised of in terms of the maximum sentence, but if you're a prior record level six, *the maximum sentence that would be imposed would be a minimum of 146 months to a maximum of 188 months.*
>
> I just need to ask, does that in any way change your view on whether you want to represent yourself or not?
>
> THE DEFENDANT: No.
>
> THE COURT: And yesterday we addressed your motion to withdraw your waiver of counsel and you indicated that you were doing that because you wanted your attorneys to do the voir dire and then you do the rest of the case. Do you recall that?

THE DEFENDANT: Yeah, I did.

Jury selection proceeded and Defendant continued to ask his own questions to the prospective jurors and to excuse jurors. Once all jurors and alternate jurors were selected, the trial court confirmed with Defendant whether he was satisfied to which he responded that he was. The jury was impaneled. Defendant presented his own defense during trial. The jury found Defendant guilty of failing to report his change of address for the sex offender registry in violation of N.C. Gen. Stat. § 14-208.11(a)(2) and guilty of attaining habitual felon status. At sentencing, the trial court found Defendant to be a prior record level six, having twenty-one points and stated Defendant would be sentenced as a class C felon. The trial court sentenced Defendant to 87 to 117 months of imprisonment.

Defendant argues the trial court misinformed him of the maximum sentencing range he faced when it informed him on the first day of trial, prior to jury selection, that he faced a potential maximum punishment of 101 to 127 months of imprisonment if found to be a habitual felon or 26 to 33 months of imprisonment if found not to be a habitual felon. Defendant argues he should have been informed of the maximum "theoretical" punishment of 231 months[1] of imprisonment if found guilty on both

---

[1] 188 months is the maximum possible punishment in the presumptive range at the highest prior record level for a class C felony. N.C. Gen. Stat. § 15A-1340.17. 231 months is the maximum possible punishment in the aggravated range at the highest prior record level for a class C felony. *Id.* The trial court was aware Defendant was a prior record level six, the highest prior record level for a class C felony, which carries a 188 month maximum in the presumptive range and a 231 month maximum in the aggravated range for a class C felony. *Id.* Thus, as the trial court was aware,

charges or 59 months of imprisonment if found guilty of the registry charge but not of attaining the status of habitual felon, "assuming the highest prior record level and aggravating factors." Defendant further argues that on the second day of jury selection, the trial court "recognized that it had failed to determine whether [Defendant] knowingly and voluntarily waived his right to counsel on the habitual felon charge." At this point, the trial court informed Defendant he was facing 25 to 39 months or 146 to 188 months of imprisonment if found guilty of both the registry charge and attaining the status of habitual felon. Defendant contends the trial court's inquiry into his waiver of counsel on the second day was too late and the inconsistent maximum possible punishment ranges were likely confusing to him. We disagree.

While the trial court inquired further into Defendant's waiver of counsel on the second day of trial during jury selection and jury selection is considered a critical stage at trial, Defendant was represented by counsel during voir dire as discussed *supra. State v. Veney*, 259 N.C. App. 915, 920, 817 S.E.2d 114, 118 (2018). Thus, even if prior to this point the requirements of N.C. Gen. Stat. § 15A-1242 were not met, Defendant was represented by counsel at that time. *See Lindsey*, 271 N.C. App. at 128, 843 S.E.2d at 330.

"[A] mistake in the number of months which a trial judge employs during a

Defendant was not facing aggravating factors, the trial court informed Defendant of the true maximum possible punishment he was facing if found guilty on both charges and further was ultimately sentenced for less time than he was informed.

colloquy with a defendant contemplating the assertion of his right to proceed *pro se*" does not constitute "a *per se* violation of N.C. Gen. Stat. § 15A-1242." *State v. Gentry,* 227 N.C. App. 583, 599-600, 743 S.E.2d 235, 246 (2013). Further, "such a calculation error would only contravene N.C. Gen. Stat. § 15A-1242 if there was a *reasonable likelihood* that the defendant might have made a different decision with respect to the issue of self-representation had he or she been more accurately informed about 'the range of permissible punishments.'" *Id.* at 600, 743 S.E.2d at 246 (emphasis added). While the trial court did inform Defendant of different maximum possible sentences on the first and second day of trial, on the second day the trial court informed him of the correct maximum possible sentence he faced considering his charges and prior record level. N.C. Gen. Stat. § 15A-1340.17. Further, Defendant has not established there was any reasonable likelihood he would have made a different decision regarding self-representation had he been informed of what he alleges is the proper maximum possible sentence.

The record is clear Defendant had expressed and maintained a desire to represent himself since the 26 October 2022 hearing, more than a year prior to trial. While Defendant was not yet aware he would face habitual felon status at the time of the 26 October 2022 hearing, he expressed and maintained his decision to represent himself even after becoming aware of his exposure to habitual felon status months prior to trial. Defendant does not argue that his waiver at the 26 October 2022 hearing was invalid at the time. We acknowledge Defendant filed motions to

"withdraw waiver of amendment of right to counsel," notwithstanding, the record clearly demonstrates that the trial court thoroughly discussed each motion with Defendant, and ultimately determined Defendant's motions to "withdraw waiver of amendment of right to counsel" did not support Defendant's ultimate goal of representing himself. Further, the trial court sentenced Defendant at the bottom of the mitigated range for a class C felony to 87 to 117 months of imprisonment. N.C. Gen. Stat. § 15A-1340.17. This term of imprisonment is less than both the potential maximum sentence ranges the trial court informed Defendant he could face if found guilty of both charges on the first and second day of trial.

The trial court performed thorough inquiries at pretrial hearings and prior to the jury being impaneled, and the record shows Defendant had been clear and consistent in his expression of intent to represent himself and his understanding regarding the consequences of representing himself. Thus, we conclude the trial court adequately complied with the requirements set forth in N.C. Gen. Stat. § 15A-1242; further, there was not a reasonable likelihood that Defendant's decision to represent himself would have been different had the trial court informed him of the theoretical maximum possible punishment of 231 months of imprisonment. *Gentry,* 227 N.C. App. at 600, 743 S.E.2d at 246.

### III.    Conclusion

For the foregoing reasons, we hold Defendant received a fair trial free from error.

NO ERROR.

Judges STROUD and MURRY concur.

Report per Rule 30(e).